OPINION
O’SCANNLAIN, Circuit Judge:
We must decide whether the Visual Artists Rights Act applies to a used school bus transformed into a mobile replica of a 16th-century Spanish galleon.
I
A
Plaintiffs Simon Cheffins and Gregory Jones, along with a number of volunteers, built the La Contessa, a replica of a 16th-century Spanish galleon for use at the Burning Man Festival.[1] Cheffins began his creation by acquiring a used school bus. He and Jones then designed and constructed the galleon facade, including a hull, decking, masts, and a hand-crafted figurehead. These elements and the bus were then transported to the Black Rock Desert in northern Nevada, the site of Burning Man, and assembled. When completed, the La Contessa was approximately sixty feet wide and sixteen feet long with a mast over fifty feet tall.
The La Contessa first appeared at the Festival in 2002. Festival participants took rides on the La Contessa, and at least two weddings were performed on its deck. It reappeared in 2003 and 2005. In 2003, it was used as part of a marching band performance, and, in 2005, it was the centerpiece of a children’s treasure hunt, among other things.
After the 2002 Festival, Cheffins and Jones stored the La Contessa on property owned by Festival organizers. After the 2003 and 2005 Festivals, Cheffins and. Jones stored the La Contessa on land in Nevada held in life estate by one Joan Grant, who had given them permission to do so. In late 2005, however, Grant’s home burned down, causing her to abandon the life estate. Thereafter, defendant Michael Stewart took possession of the land in fee simple through a limited liability company.
Cheffins and Jones did not relocate the La Contessa after the change of property ownership. Rather, it sat unmoved on Stewart’s land until December 2006. Sometime during that month, Stewart intentionally burned the wooden structure of the La Contessa so that a scrap metal dealer could remove the underlying school bus from his property.
B
Cheffins and Jones filed this suit in the District of Nevada in March 2009, alleging that Stewart violated the Visual Artists Rights Act, 17 U.S.C. § 106(A) (VARA), and committed common law conversion when he destroyed the La Contessa. After cross motions for summary judgment, *592 Magistrate Judge Robert McQuaid dismissed Cheffins and Jones’s claim under the VARA, concluding that the La Contes-sa was “applied art” and so not protected by the statute.[2] Cheffins and Jones’s conversion claim proceeded to trial before a jury, which found in favor of Stewart, who then moved for and was granted an award of attorneys’ fees under Federal Rule of Civil Procedure 54(d)(2) and Nevada state law.
II
In this timely filed appeal, Cheffins and Jones contend that the trial court erred when it granted summary judgment on their VARA claim and that Stewart was not entitled to attorneys’ fees. Cheffins and Jones also appeal several evidentiary rulings, assert that the trial court gave several deficient jury instructions, and contend that the trial court erred when it failed to grant summary judgment on their conversion claim.
A
The VARA was enacted in 1990 as an amendment to the Copyright Act. 17 U.S.C. § 106A. “The purpose of VARA is to protect two ‘moral rights’ of artists — the rights of ‘integrity’ and ‘attribution.’ ” Cort v. St. Paul Fire & Marine Ins. Cos., 311 F.3d 979, 984-85 (9th Cir. 2002) (citing H.R. Rep. No. 514, 101st Cong., 2nd Sess. 5 (1990)). “The right of integrity allows the [artist] to prevent any deforming or mutilating changes to his work, even after the title in the work has been transferred.” Id. at 985 (citation omitted and internal quotation marks omitted) (alteration in original). “The right of attribution allows the artist to be recognized by name as the creator of a work.” Id. In order to provide those protections, the VARA states that “the author of a work of visual art” shall “have the right,” among other things, to “prevent any intentional distortion, mutilation, or other modification of [a] work which would be prejudicial to his or her honor” and “to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work.... ”17 U.S.C. § 106A(a).
As the text of the statute shows, the VARA only applies to “works of visual art.” It does not define the term “work of visual art,” but the VARA is part of the Copyright Act, which defines “work of visual art” in the affirmative and in the negative. A “work of visual art” is:
(1) a painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author, or, in the case of a sculpture, in multiple cast, carved, or fabricated sculptures of 200 or fewer that are consecutively numbered by the author and bear the signature or other identifying mark of the author; or
(2) a still photographic image produced for exhibition purposes only, existing in a single copy that is signed by the author, or in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author.
17 U.S.C. § 101. On the other hand, a “work of visual art” is not:
(A)(i) any poster, map, globe, chart, technical drawing, diagram, model, applied art, motion picture or other audiovisual work, book, magazine, newspaper, periodical, data base, electronic information service, electronic publication, or similar publication;
(ii) any merchandising item or advertising, promotional, descriptive, covering, or packaging material or container; *593 (iii) any portion or part of any item described in clause (i) or (ii).
Id. (emphasis added).
B
On summary judgment, Stewart asserted, and the trial court subsequently concluded, that the La Contessa was not a “work of visual art” because it was “applied art.” Whether the trial court properly granted summary judgment on the VARA claim turns on whether the La Contessa was a “work of visual art.” The parties assert that this question, in turn, depends on whether it was applied art.[3]
Ill
A
The VARA does not define the term “applied art,” and federal courts have rarely had occasion to interpret its meaning. In Carter v. Helmsley-Spear, Inc., 71 F.3d 77 (2d Cir. 1995), the Second Circuit held that a sculpture constructed of portions of a school bus and affixed to a wall in a building lobby was not “applied art.” Id. at 83. It explained that the term “applied art” means “two-and three-dimensional ornamentation or decoration that is affixed to otherwise utilitarian objects.” Id. at 84-85 (internal quotation marks omitted). The court further explained that the sculpture was not “applied art” simply because it was affixed to “the lobby’s floor, walls, and ceiling” because “[interpreting applied art to include such works would render meaningless VARA’s protection for works of visual art installed in buildings.” Id. at 85.
The Second Circuit provided an additional gloss on what constitutes a “work of visual art,” and by extension what constitutes “applied art,” in Pollara v. Seymour, where it explained that the “VARA may protect a sculpture that looks like a piece of furniture, but it does not protect a piece of utilitarian furniture, whether or not it could arguably be called a sculpture.” 344 F.3d 265, 269 (2d Cir. 2003). The court went on to hold that an elaborate painted banner was not a “work of visual art” eligible for protection under the VARA. Id. at 271.
We agree in large part with the Second Circuit’s analysis. As the Second Circuit suggested, the focus of our inquiry should be on whether the object in question originally was — and continues to be— utilitarian in nature. Such a focus comports with dictionary definitions of the term “applied art.”[4] For example, Webster’s Dictionary defines “applied art” as “employed in the decoration, design or execution of useful objects.” The Merriam Webster Dictionary 105 (3d ed. 1974) (emphasis added). Similarly, the Oxford English Dictionary explains that one definition of “applied” is “put to practical use” and lists “applied arts” as a frequent application of the term. The Oxford English Dictionary (2d ed. 1989). These definitions suggest that, in its ordinary meaning, applied art consists of *594 an object with a utilitarian function that also has some artistic or aesthetic merit.
Further, this approach makes sense in the statutory context in which “applied art” is used in 17 U.S.C. § 101. “Applied art” is enumerated in a list that also contains, inter alia, maps, globes, charts, technical drawings, diagrams, models, newspapers, periodicals, data bases, and electronic information services. 17 U.S.C. § 101. The fact that the other items in the list are utilitarian objects leads us to conclude that the listed items are related by their practical purposes and utilitarian functions, requiring a focus on utility when construing the term “applied art.”[5]
We therefore hold that an object constitutes a piece of “applied art” — as opposed to a “work of visual art” — where the object initially served a utilitarian function and the object continues to serve such a function after the artist made embellishments or alterations to it.[6] This test embraces the circumstances both where a functional object incorporates a decorative design in its initial formulation, and where a functional object is decorated after manufacture but continues to serve a practical purpose. Conversely, “applied art” would not include a piece of art whose function is purely aesthetic or a utilitarian object which is so transformed through the addition of artistic elements that its utilitarian functions cease.
B
We respond briefly to the concern expressed in the concurrence that the standard we adopt today may not be workable — that it raises difficult questions regarding where exactly the line defining “applied art” will be drawn. See Concurrence at 599. The analysis we adopt today directs the court’s attention away from assessments of an object’s artistic merit and instead toward the object’s practical utility. The standard is relatively simple: where a functional object, despite claims of artistic merit, continues to serve a utilitarian purpose, it is applied art. Although the answers to some of the questions regarding this standard may be clear,[7] resolution of the case before us does not require us to provide a comprehensive inventory of all the objects that will or will not meet the definition of “applied art.”
Indeed, the call for a “more textured and flexible definition of applied art,” *595 Concurrence at 599, raises even greater concerns of line drawing. The concurrence would have judges “evaluate [a] work as a whole,” to determine “whether the artistic creation is subservient” to its “useful function.” Id. at 602. Such an analysis necessarily requires courts to express judgments regarding the importance of an object’s artistic qualities, and to determine whether those qualities predominate over the object’s non-artistie utility. Even approached from the perspective of a “reasonable observer,” id. at 603, the question for a court remains whether an objectively reasonable person would conclude that a creation is more “art” than useful object. How different judges could answer such a question on a consistent basis is anything but clear.
Any attempt to guide judicial determinations of an amorphous concept like “applied art” is unlikely to be completely satisfying to all. But the approach we adopt today instructs courts to focus precisely on an object’s continuing utility — and not to ask whether that utility is somehow subservient to an artistic creation. Difficult cases may still arise, but our standard aims to limit the situations in which they do.
C
We now apply this standard to the facts of this case.
The La Contessa began as a simple school bus — an object which unquestionably served the utilitarian function of transportation. To transform the bus into the La Contessa, Cheffins and Jones adorned it with the visual trappings of a 16th-céntury Spanish galleon. While the La Contessa’s> elaborate decorative elements may have had many artistic qualities, the La Contessa retained a largely practical function even after it had been completed.’ At Burning Man, the La Contessa was used for transportation, providing rides to festival-goers, hosting musical performances and weddings, and serving as a stage for poetry and acrobatics shows. Indeed, the La Contessa often was driven about the Festival grounds and was banned from the Festival in 2004 because “its unsafe driving practices far exceeded community tolerance and out-weighed the visual contribution” it made.
Under the definition we adopt today, the La Contessa plainly was “applied art.” It began as a rudimentary utilitarian object, and despite being visually transformed through elaborate artistry, it continued to serve a significant utilitarian function upon its completion. As “applied art,” the La Contessa was not a work of visual art under the VARA and therefore not eligible for its protection. Therefore, the trial court properly granted summary judgment to Stewart on Cheffins and Jones’s VARA claim.
IV
A
Cheffins and Jones next argue that the trial court abused its discretion when it excluded the testimony of Joanne Northrup and Diedre DeFranceaux, two of their expert witnesses, and when it refused to allow Cheffins and Jones to supplement other expert reports. After conducting a lengthy hearing on the matter, the trial court concluded that the proffered testimony would be unduly speculative. The trial court did not abuse its considerable discretion in this case. We have repeatedly explained that “a trial court not only has broad latitude in determining whether an expert’s testimony is reliable, but also in deciding how to determine testimony’s reliability.” Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1017 (9th *596 Cir. 2004) (internal quotation marks omitted).
B
Cheffins and Jones raise two issues related to the trial court’s jury instructions on abandoned property. First, they contend that the trial court abused its discretion when it declined to instruct the jury on abandoned property, lost profits, and punitive damages based on Nevada Revised Statutes §§ 487.210-487.250. The trial court did not abuse its discretion. The statutory scheme only applies to “vehicles abandoned on public land,” and it is uncontested that the La Contessa remained on Stewart’s private land until its destruction. N.R.S. § 487.235.[8]
Second, Cheffins and Jones contend that the trial court improperly instructed the jury on abandonment under Nevada law, asserting that the given instruction failed to explain the required showing of intent. The given instruction, however, explained that “abandonment may be inferred from ... acts done” and thus comported with Nevada law. See J.H. Mallett v. Uncle Sam Gold & Silver Mining Co., 1 Nev. 188, 204-05 (1865) (holding that “the moment the intention to abandon and the relinquishment of possession unite, the abandonment is complete”).
C
Cheffins and Jones next assert that the trial court abused its discretion by failing to include jury instructions on lost profits and punitive damages resulting from the destruction of the La Contessa— which the court concluded were unduly speculative. The court did not abuse its discretion. Moreover, even if the district court had erred, such error was harmless because the jury found in favor of Stewart on Cheffins and Jones’s conversion claim, meaning that there were no damages to award in any case. See Kennedy v. S. Cal. Edison Co., 268 F.3d 763, 770 (9th Cir. 2001) (explaining that “[h]armless error review applies to jury instructions in civil cases”).
D
Cheffins and Jones also contend that the trial court erred when it admitted evidence of drug paraphernalia surrounding the La Contessa as it sat on Stewart’s property. The trial court first determined that it would not admit such evidence, but then reversed itself and allowed the evidence “simply to show the condition of things around the ship” when a witness visited the La Contessa. We have previously explained that “evidentiary rulings should not be reversed absent clear abuse of discretion and some prejudice,” S.E.C. v. Jasper, 678 F.3d 1116, 1122 (9th Cir. 2012), and we see neither clear abuse of discretion nor prejudice here. Such evidence was relevant to the value of the La Contessa at the time of its destruction, and the trial court provided the jury with an appropriate limiting instruction.
E
Cheffins and Jones next contend that the trial court erred when it denied their motion for partial summary judgment on their conversion claim. The conversion claim subsequently was presented to a jury, which returned a verdict in favor of Stewart. Cheffins and Jones’s appeal therefore fails at the outset, because “we do not review the denial of summary judg *597 ment when the case has gone to trial.” Affordable Hous. Dev. Corp. v. City of Fresno, 433 F.3d 1182, 1193 (9th Cir. 2006); see also Lum v. City & Cty. of Honolulu, 963 F.2d 1167, 1170 (9th Cir. 1992) (concluding that “there is no need to review denials of summary judgment after there has been a trial on the merits,” and dismissing appeal).
V
Finally, Cheffins and Jones challenge the court’s award of attorneys’ fees to Stewart, which the court made after they rejected an offer of judgment made under Nevada law. Federal Rule of Civil Procedure 54(d) allows a party to recover attorneys’ fees, when, among other things, a motion specifies “the statute, rule, or other grounds entitling the movant to the award.” Moreover, we have recognized that, under Nevada law, “a prevailing [party] is entitled to recover attorneys’ fees if an offer of judgment is rejected.” MRO Commc’ns, Inc. v. AT&T, 197 F.3d 1276, 1281 (9th Cir. 1999); see Nev. R. Civ. P. 68.
Cheffins and Jones assert that the timing requirements of Federal Rule of Civil Procedure 68 apply to an offer of judgment made under state law, rendering the award of attorneys’ fees improper because the offer of judgment on which the trial court based its award would not have been timely. Stewart urges that Rule 68 does not apply.
We agree with Stewart. “Rule 54 provides a federal procedural mechanism for moving for attorney’s fees that are due under state law.” Med. Protective Co. v. Pang, 740 F.3d 1279, 1283 (9th Cir. 2013). Therefore, “Nevada’s offer of judgment rules and statutes ... provide the applicable procedure” for awarding attorneys’ fees in a case like this one, where the only claim at the time Stewart made his offer of judgment was a state law conversion claim. MRO, 197 F.3d at 1281-83 (“In an action where a district court is exercising its subject matter jurisdiction over a state law claim” the “state law denying the right to attorney’s ibes or giving a right thereto, which miNeis a substantial policy of the state, nhould be followed.” (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 140, 259 n. 31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975))). Because Federal Rule of Civil Procedure 54(d)(2) provides the applicable procedure for awarding attorneys’ lees, and because Stewart’s offer of judgment complied with the underlying Nevada state law rule, it was timely for purposes of the trial court’s award of attorneys’ hies.[9]
AFFIRMED.[10]

. As Cheffins and Jones helpfully explain, Burning Man is an art and countercultural festival held each year for the week preceding Labor Day.

. The parties consented to proceed before a magistrate judge under 28 U.S.C. § 636(c).

. Even if the La Contessa were not “applied art” it is not clear that it would qualify for protection under the VARA. After all, the "VARA’s definition of work of visual art operates to narrow and focus the statute’s coverage; only a painting, drawing, print, or sculpture, or an exhibition photograph will qualify.” Kelley v. Chicago Park Dist., 635 F.3d 290, 300 (7th Cir. 2011) (internal quotation marks omitted). While the trial court concluded that the La Contessa was a sculpture, we need not further address the issue because it is not raised on appeal.

. We adopt the "common practice of consulting dictionary definitions” to clarify the "ordinary meaning” of terms used in a statute but not defined therein. Johnson v. Aljian, 490 F.3d 778, 780 (9th Cir. 2007). We consult “the edition [of the dictionary] in print when Congress enacted” the VARA. Id.

. Under the canon of noscitur a sociis "statutory terms 'grouped in a list should be given related meaning’ " and the fact that " 'several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well.' ” Rosebrock v. Mathis, 745 F.3d 963, 976 (9th Cir. 2014) (quoting United States v. Kimsey, 668 F.3d 691, 701 (9th Cir. 2012)); see also Antonin Scalia and Bryan Garner, Reading Law: The Interpretation of Legal Texts 195-98 (2012) (discussing the noscitur a sociis canon).

. With recognition that nearly every object on which art is installed will be in some sense "utilitarian,” we caution that the utilitarian function must be something other than mere display of the work in question. See also 17 U.S.C. § 101 ("A 'useful article’ is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information.”).

.For example, we have explained that the "transformation from utilitarian object to work of art,” Concurrence at 599, occurs where an object’s utilitarian functions cease. We can leave for another case whether there might be some de minimis exception to this standard, where an object continues to serve only the most trivial of utilitarian functions. Further, we have explained that our focus is on objects that in fact continue to serve real utilitarian functions (as opposed to those which may retain the ability to serve utilitarian functions, or those which at one point in history served such functions, see id.).

. Cheffins and Jones’s related contention that the trial court should have provided a jury instruction based on N.R.S. § 118A.460 fails for a similar reason. That statute applies to landlord-tenant relationships, and is inapplicable to the facts of this case.

. While the parties did not brief the issue, we agree with the trial court that there is no conflict between Federal Rule of Civil Procedure 68 and Nevada Rule of Civil Procedure 68. See Goldberg v. Pac. Indem. Co., 627 F.3d 752, 756 n. 7 (9th Cir. 2010) (explaining that the MRO opinion is not relevant to whether Arizona's offer of judgment rule conflicts with Federal Rule of Civil Procedure 68 because, unlike Arizona, Nevada’s rule allows for recovery of attorneys' fees).

. The denial of Cheffins and Jones’s motion for summary judgment is not appealable and their appeal from that order is therefore DISMISSED. Affordable Hous. Dev. Corp., 433 F.3d at 1193.