**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KENTON L. CROWLEY; JOHN A. FLORES, *Plaintiffs-Appellants*, v. EPICEPT CORPORATION, *Defendant-Appellee.* | No. 15-56571 D.C. No. 3:09-cv-00641-L-BGS OPINION |

Appeal from the United States District Court
for the Southern District of California,
M. James Lorenz, Senior District Judge, Presiding

Submitted April 5, 2017[*]
Pasadena, California

Filed February 13, 2018

Before: Kim McLane Wardlaw and Consuelo M. Callahan, Circuit Judges, and Gordon J. Quist, Senior District Judge.[**]

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

[**] The Honorable Gordon J. Quist, Senior District Judge for the United States District Court for the Western District of Michigan, sitting by designation.

Per Curiam Opinion;
Dissent by Judge Wardlaw

## SUMMARY[***]

### Jury Instructions

The panel affirmed the district court's judgment in favor of EpiCept Corporation in a diversity action brought by doctors alleging claims arising from their assignment to EpiCept of two patents for a non-FDA approved drug and EpiCept's failure to develop those patents into FDA-approved drugs.

The panel held that the district court did not abuse its discretion in formulating the jury instructions, or in determining that the jury's verdict was not against the clear weight of the evidence.

Specifically, the panel held that the doctors waived two of their challenges to the jury instructions. The panel further held that the challenged instructions correctly stated the law, and the jury was clearly and adequately informed that only a *material* breach by the doctors could defeat their breach of contract claim against EpiCept. Accordingly, the district court did not abuse its discretion in denying the doctors' request for a new trial on this ground. Finally, the panel rejected, as harmless error, the doctors' challenge to the jury instructions, or lack thereof, relating to EpiCept's position at

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

trial that even if it had breached the parties' agreement, the doctors were not entitled to return of their patents as a remedy.

The panel rejected the doctors' challenge to the district court's response to the question posed by the jury during deliberations. The panel concluded that the district court's original instructions to the jury were adequate and accurately stated New Jersey law, and the jury's question did not indicate that the jury was interpreting the law incorrectly. Accordingly, the district court did not abuse its discretion in referring the jury back to the instructions already given and the evidence presented at trial.

The panel rejected the doctors' challenges to the verdict's evidentiary basis. The panel held that the doctors waived their right to directly challenge the sufficiency of the evidence by failing to make the appropriate Fed. R. Civ. P. 50 motions. Concerning the doctors' motion for a new trial under Fed. R. Civ. P. 59, the panel held that the district court did not abuse its discretion in denying the motion where there was sufficient evidence of a material breach of the agreement under New Jersey law.

Judge Wardlaw dissented, and would reverse and remand for a new trial. Judge Wardlaw would hold that the jury's verdict was not supported by substantial evidence because no rational jury could find material breach on the evidence presented, and, that the district court inadequately instructed the jury on this claim.

**COUNSEL**

Karen A. Larson, Karen A. Larson P.A., Dana Point, California, for Plaintiffs-Appellants.

Philip Tencer, TencerSherman LLP, San Diego, California, for Defendant-Appellee.

**OPINION**

PER CURIAM:

This appeal follows the trial on Drs. Crowley and Flores's (the Doctors) claims against EpiCept Corporation (EpiCept) for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. The Doctors' claims arise from their assignment to EpiCept of two patents for a non-FDA approved drug (referred to as "NP-2") and EpiCept's failure to develop those patents into FDA-approved drugs. Following an adverse jury verdict, the Doctors take issue with certain jury instructions, the district court's answer to a jury question, the evidence supporting the verdict, and the district court's exclusion of the Doctors' expert. The majority of the Doctors' arguments center on the jury's determination that the Doctors materially breached their contract with EpiCept by failing to disclose that Dr. Flores treated burn patients with NP-2. We find that the district court did not abuse its discretion in formulating the jury instructions, or in determining that the jury's verdict was not against the clear weight of the evidence. Accordingly, neither the jury instructions given in this case nor the evidence presented at trial warrants the do-over the Doctors demand. The district court's response to the jury's question also does not merit a

new trial, as the jury's question was essentially factual and the court's answer appropriately directed the jury to consider its original instructions and the evidence presented at trial. Finally, because we affirm the jury's finding that the Doctors materially breached the contract, the district court's exclusion of the Doctors' damages expert was necessarily harmless. Accordingly, we affirm.

## I. BACKGROUND

### A.

The Doctors jointly invented a process for the preparation of ketamine ointment (U.S. Patent No. 5,817,699) and a method for the preparation of the same ointment containing various amounts of ketamine and butamben (U.S. Patent No. 5,817,961). The cream, also referred to as NP-2, is designed to treat six types of pain. EpiCept was a private pharmaceutical company that focused on developing technology for pain management. EpiCept secured funding through private venture capital.

The Doctors and EpiCept entered into a contract in December 2000 (the Agreement), in which the Doctors agreed to "assign to EpiCept [their] entire right, title and interest in and to the Invention, any Improvements," and the patents themselves. Dr. Crowley and Peter Golikov, EpiCept's then-President and Chief Operating Officer, negotiated the Agreement. EpiCept paid a $300,000 up-front assignment fee and agreed to pay the Doctors royalties on commercial sales. The Agreement also contained a New Jersey choice-of-law clause. Section 2.1 of the Agreement required the Doctors to "provide written notice to EpiCept of each Improvement within thirty (30) days of the date of

conception of such Improvement or, if conceived prior to the Effective Date [of the Agreement], then within ten (10) days after the Effective Date . . . ." The Doctors were also required to assign any improvement to EpiCept. Section 1.3 defined an improvement as "any modification of the Invention that is, on or after the Effective Date, or was, prior to the Effective Date, invented, conceived and/or reduced to practice by [the Doctors], provided that such modification or the use thereof would, if unlicensed," infringe one of the patents. Section 10 provided the process by which the parties could terminate the Agreement. The Doctors had the right to terminate the Agreement under certain circumstances, including EpiCept's failure "to use commercially and scientifically reasonable efforts to" pursue an Investigational New Drug Application or a New Drug Application with the United States Food and Drug Administration (FDA) within specified time frames. Section 10 further provided that "[i]n the event of any material breach or default . . . by a party . . . the other party . . . shall give the Defaulting Party written notice of the default and its election to terminate this Agreement at the expiration of a cure period of ninety (90) days from the date of the notice." If the Doctors "duly terminate[d]" the Agreement, EpiCept was to return the patents to them.

At some point prior to entering the Agreement, Dr. Flores used NP-2 to treat "a few" first- and second-degree burns at his clinic. The Doctors never disclosed this use to EpiCept.

Between December 2000 and October 2001, EpiCept conducted various studies on NP-2 and corresponded with the FDA regarding the drug's potential for approval. EpiCept ultimately decided to postpone direct development of NP-2 in October 2001, but waited until November 2002 to give notice

of this decision to the Doctors. The parties corresponded over the next several years regarding the status of NP-2's development. On May 18, 2004, the Doctors demanded a cure under § 10 of the Agreement because EpiCept had done no work on NP-2 since late 2001. In April 2006, the Doctors terminated the Agreement and demanded reassignment of the patents.

**B.**

Over two and a half years later, in December 2008, the Doctors filed suit alleging claims for breach of contract, breach of implied covenant of good faith and fair dealing, fraud, and rescission.[1] On January 26, 2012, the district court granted EpiCept's motion for summary judgment. 2012 WL 253153 (S.D. Cal. Jan. 26, 2012). The district court excised the definition of "Improvement" from the Agreement because it "produce[d] an absurd outcome," and concluded that term "reasonably means and includes any modification of the patents that is invented, conceived and/or reduced to practice by [the Doctors]." *Id.* at *7–8. The Doctors appealed this decision, and we found that the district court erred by excising and re-defining "[I]mprovement" because "[a]n 'improvement' that updates a component of the technology used in a method patent . . . could be both a modification and an infringement." *Crowley v. EpiCept Corp.*, 547 F. App'x 844, 846 (9th Cir. 2013) (citing *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1352 (Fed. Cir. 2012)).

---

[1] The case was originally filed in the District of New Jersey, but eventually made its way to the Southern District of California.

Questions of fact therefore remained as to whether Dr. Flores's use of NP-2 to treat burns constituted an infringement and, if so, whether the Doctors' failure to disclose this use constituted a material breach. We explained: "[E]ven if Plaintiffs' failure to report this use of the ointment was a breach, it must have been a material breach—one that 'defeat[s] the purpose of the contract,'—to excuse Defendant from the performance of its duties." *Id.* (internal citations omitted).

On remand, the Doctors continued to advance their breach-of-contract theory. EpiCept's primary theory of the case was that the Doctors could not demonstrate the second element of a contract claim under New Jersey law—that they "did what the contract required [them] to do"—because (a) Dr. Flores used the NP-2 ointment on patients suffering from first- and second-degree burns, (b) the use constituted an improvement under the Agreement, (c) the Doctors failed to timely notify EpiCept of an improvement, violating § 2.1 of the Agreement, and (d) this conduct constituted a material breach.

As the case progressed towards trial, the Doctors sought to have Chris Pedersen, a business appraiser, opine as to a number of issues, particularly on the value of a drug patent. Following a *Daubert* [2] hearing, the district court excluded Pedersen's opinion testimony because it was unreliable. Specifically, the court determined that Pederson's "testimony regarding FDA approval is either based on pure conjecture, or simply a parroting of what Dr. Flores told him," and was not based on sufficient facts or data because Pederson "refused to look for any statistics to estimate the risk that the

---

[2] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

FDA would not approve NP-2, because he [thought] that investors do not consider such things. Instead, he simply assumed that there was no risk."

The trial finally began on March 12, 2015, and the "material breach" issue continued to feature prominently. On the fifth day of trial, EpiCept moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. EpiCept argued, among other things, that the undisputed evidence established that the Doctors were required to disclose any improvements in writing and had failed to disclose Dr. Flores's use of NP-2 to treat burn patients, which constituted a material breach of the contract. The Doctors responded that, pursuant to the Ninth Circuit's ruling on the summary judgment order, the jury should decide whether the Doctors' failure to disclose this use of NP-2 was a "material" breach. In hearing argument on EpiCept's Rule 50 motion, the district court inquired whether there was any evidence that the Doctors had complied with the Agreement's 90-day cure provision, but the court's order denying EpiCept's motion neither addressed the Doctors' compliance with the 90-day cure period nor recognized that issue as a basis for EpiCept's Rule 50 motion.

The trial continued, with the parties sparring over the jury instructions on material breach, waiver, and adoptive admissions. The Doctors agreed to the jury instruction entitled "Plaintiffs Failure to Do What the Contract Required," but later argued that the "Claims of Breach" instruction should be modified to make clear that "material breach" applied to both the Doctors and EpiCept. The Doctors argued this change was necessary to ensure the jury understood that Dr. Flores's treatment of burns with NP-2 could only defeat the Doctors' breach of contract claim—as

set forth in the "Elements of Contract Claim" instruction—if that conduct constituted a "material" breach.[3] The court rejected the Doctors' arguments. It found that the "Claims of Breach" instruction was adequately mutual, and that the Doctors could explain to the jury in closing arguments that if the jury found that Dr. Flores's treatment of burns was not a "material" breach, then the Doctors satisfied the second element of their breach of contract claim, as set forth in the "Elements of Contract Claim" instruction.

The Doctors also insisted that the jury should be instructed regarding adoptive admissions, thereby permitting the jury to find that, by failing to respond to the Doctors' written communications accusing them of breach, EpiCept admitted that it had breached the Agreement. The Doctors further asserted that the verdict form should reflect that the jury could find that EpiCept had waived the Doctors' compliance with the 90-day cure provision.

In response to these and other arguments, the court gave the jury instructions entitled "Elements of Contract Claim," "Claims of Breach," and "Plaintiffs Failure to Do What Contract Requires." The "Plaintiffs' Failure to Do What Contract Requires" instruction provides, in full:

> EpiCept claims that Plaintiffs cannot establish a breach of contract because Plaintiffs failed to do what the contract required of them. Specifically, EpiCept claims the contract

---

[3] The Doctors' counsel argued that "there's no way any reasonable person could argue that . . . treatment of the burns was such a substantial breach of the contract it excused all of [EpiCept's] conduct."

obligated Plaintiffs to disclose, in writing, their treatment of burn patients with NP2.

To decide this issue, you must determine whether:

1. Dr. Flores' use of NP2 was at all times covered by the '961 patent;

2. The '961 patent makes no mention of treating burn patients;

3. Plaintiffs failed to disclose the treatment of burn victims with NP2 in writing to EpiCept; and

4. The failure to disclose the treatment of burn victims with NP2 in writing to EpiCept was material. A failure to disclose is material if it defeats the purpose of the contract.

If you answered yes to all four issues, then you must find that Plaintiffs cannot prevail on their breach of contract claim.

The "Claims of Breach" instruction provides:

One of the elements that the plaintiffs must prove is defendant's breach of contract. Failure to perform a contract in accordance with its terms constitutes a breach of contract. It does not matter if the failure was purposeful or inadvertent. The plaintiffs claim the

defendant breached the contract in the following manner:

EpiCept stopped its effort to obtain FDA approval of plaintiffs' drug and failed to return the patents after plaintiffs demanded their return.

The defendant denies this. EpiCept contends that it never had an obligation to return the patents because its efforts to obtain FDA approval were commercially and scientifically reasonable and Plaintiffs failed to perform its obligations under the contract.

A breach may be material or minor. Plaintiff can sue for any breach, even if minor providing the breach causes the plaintiff measurable injury or damage. When there has been a minor breach that may have caused the plaintiff injury or damage, it is possible for you to conclude that the defendant has nevertheless substantially performed the contract.

To find that the defendant substantially performed the contract, you would have to conclude from the evidence that the defendant made a good faith effort that actually achieved the essential purpose of the contract and provide[d] the plaintiff with the fundamental benefits that plaintiff was supposed to receive from the contract.

Now, let me explain what happens if you conclude the breach was not minor but was material. A breach is material if it affects the purpose of the contract in an important or vital way. A material breach defeats the purpose of the contract and is inconsistent with the intention of the parties to be bound by the contract terms. When a defendant materially breaches a contract, the plaintiff has a right to terminate the contract and may be excused from further performance of plaintiff's remaining obligations under the contract. When the plaintiff's promise under the contract was dependent upon the defendant's performance and the defendant fails to perform, then the plaintiff is excused from his/her further performance of his/her promise.

When a party materially breaches the contract but does not indicate any intention to renounce or repudiate the remainder of the contract, the plaintiff can elect to either continue to perform or cease to perform. If the plaintiff elects to perform, plaintiff is deprived of an excuse for ceasing performance. But even if the plaintiff elects to perform, plaintiff can still sue for any injury or damages suffered because of the material breach.

The court further instructed the jury that it could only consider EpiCept's failure to respond to the Doctors' written communication to EpiCept, which stated that EpiCept was in

breach of the contract, if conditions were satisfied so that EpiCept's failure to respond constituted an adoptive admission. The jury was also instructed regarding EpiCept's affirmative defense that the Doctors had waived their right to insist on return of the patents.

Shortly after it was instructed and retired to deliberate, the jury asked by note: "Was the burn treatment (patient) before or after the agreement was entered? Does it matter? Specifically to plaintiffs [sic] failure to do what contract required." The court answered:

> In response to your question . . . these are factual questions that must be determined by the jury . . . . You must determine the facts in this case based on the evidence presented. The jury should review the contractual provisions in addition to all of the other jury instructions . . . in arriving at a verdict.

The jury returned a verdict for EpiCept on all counts of the complaint. The Doctors moved for a new trial under Rule 59, arguing, among other things, that the instructions failed to clarify "that the concept of material breach was equally applicable to the [the Doctors] as to any condition [with which] they were required to comply." The court denied the motion, and entered judgment in the EpiCept's favor.

The Doctors appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.  DISCUSSION

### A.

The Doctors make a number of arguments related to the jury instructions.  First, they contend that the jury instructions were erroneous because they did not require the jury to decide whether Dr. Flores's use of NP-2 to treat burns was an "improvement" under the Agreement.  Second, the Doctors argue that the jury was not adequately instructed that the Doctors' own breach could only defeat their breach of contract claim if their breach was material.  Finally, the Doctors challenge the instructions, or lack thereof, dealing with EpiCept's late-raised argument that the Doctors were not entitled to return of their patents because they failed to comply with the Agreement's 90-day notice-to-cure requirement.  They contend not only that the district court erred in giving the instructions as it did, but that the district court abused its discretion in denying the Doctors' motion for a new trial on this basis.

"When a party raises a contemporaneous objection to a jury instruction, we review the jury instruction either de novo or for abuse of discretion, depending on the nature of the error."  *Chess v. Dovey*, 790 F.3d 961, 970 (9th Cir. 2015).  "We review a district court's formulation of civil jury instructions for an abuse of discretion, but we consider de novo whether the challenged instruction correctly states the law."  *Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014).  Similarly, a new trial may be warranted if the district court has given "erroneous jury instructions" or failed "to give adequate instructions."  *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).  We review the district

court's denial of a motion for a new trial for an abuse of discretion. *Id.* at 186.

Challenges to jury instructions may be waived, however. A "party forfeits a right when it fails to make a timely assertion of that right and waives a right when it is intentionally relinquished or abandoned." *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 1392 (2017) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). "Waiver of a jury instruction occurs when a party considers 'the controlling law, or omitted element, and, in spite of being aware of the applicable law, proposed or accepted a flawed instruction.'" *Id.* at 1217 (quoting *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc)). "Forfeited rights are reviewable for plain error, while waived rights are not." *Perez*, 116 F.3d at 845; *see also C.B. v. City of Sonora*, 769 F.3d 1005, 1017–18 (9th Cir. 2014) (discussing plain error standard in civil context).

**1.**

The Doctors waived their argument that the jury instructions were faulty because they did not require the jury "to decide as a preliminary issue whether Dr. Flores' use of the ointment, on a few patients for burns, prior to the contract constituted an improvement under the Agreement." The Doctors have likewise waived their argument that the district court "should not have permitted the instruction at all . . . [because] there was no testimony presented as to what constituted an infringement of the Patent, and when home use, authorized by the contract, would be considered an improvement." EpiCept and the Doctors, after a jury instruction conference, explicitly agreed to use the instruction "Plaintiffs' Failure To Do What Contract Required," and

agreed that this instruction should omit the law regarding patent infringement. This instruction explained infringement, improvement, and materiality in a manner requested and agreed to by the Doctors. The Doctors intentionally abandoned any argument that the jury was not adequately instructed regarding improvement or infringement of the patents, or that the evidence did not permit this instruction. *See Kaplan*, 836 F.3d at 1216 (citing *Olano*, 507 U.S. at 733).

**2.**

For different reasons, we also find unavailing the Doctors' argument that the jury was not adequately instructed that any breach by the Doctors amounting to a "failure to do what the contract required" must have been a *material* breach. The instructions relevant to this issue were entitled "Plaintiffs' Failure to Do What Contract Required," "Claims of Breach," and "Elements of Contract Claim." After agreeing on these instructions, the Doctors raised "a mutuality issue." They argued that because the "Plaintiffs' Failure To Do What Contract Required" instruction did not include a more detailed explication of materiality, and because the "Claims of Breach" instruction defined "materiality" only in terms of a defendant's breach, the instructions on this issue were inadequate. The Doctors argued that the "Claims of Breach" instruction should be modified to make clear that "material breach," as defined in that instruction, applied to both the Doctors and EpiCept.

The Doctors' challenge to these instructions presents an issue of formulation or wording, which we review for an

abuse of discretion.[4]  *Wilkerson*, 772 F.3d at 838.  The third
and fourth elements listed in the "Plaintiffs Failure to Do
What Contract Required" instruction make clear that for
EpiCept to succeed on its theory that the Doctors' breach of
contract claim failed because the Doctors had not disclosed
their use of NP-2 to treat burns, EpiCept needed to prove that
the failure to disclose was material.  This instruction clearly
told the jury that:

> EpiCept claims that Plaintiffs cannot establish
> a breach of contract because plaintiffs failed
> to do what the contract required of them.
> Specifically, EpiCept claims that the contract
> obligated Plaintiffs to disclose, in writing,
> their treatment of burn patients with NP-2.  To
> decide this issue, you must decide whether:
> . . . the failure to disclose the treatment of
> burn victims of NP-2 in writing to EpiCept
> was material.  A failure to disclose is material
> if it defeats the purpose of the contract.

The "Claims of Breach" instruction explains "material
breach" both in terms of a "Defendant's" breach, and in
general terms.  For example, that instruction states: "A breach
is material if it affects the purpose of the contract in an
important or vital way.  A material breach defeats the purpose

---

[4] Even if the Doctors challenged the jury instructions as an incorrect
statement of the law, requiring us to review the challenged instructions de
novo, *Wilkerson*, 772 F.3d at 838, we would affirm.  The instructions did
not misstate New Jersey's law regarding material breach, or fail to
adequately inform the jury of it.  *Cf. Magnet Res., Inc. v. Summit MRI,
Inc.*, 723 A.2d 976, 981 (N.J. Super. Ct. App. Div. 1998); *Medivox Prods.,
Inc. v. Hoffman-La Roche, Inc.*, 256 A.2d 803, 809 (N.J. Super. Ct. Law
Div. 1969).

of the contract and is inconsistent with the intention of the parties to be bound by the contract terms." The Doctors had every opportunity during closing arguments to argue that the jury should consider the definition of materiality in more detail, and the district court reminded them of their opportunity to do so.

We therefore hold that the district court did not abuse its discretion in formulating the jury instructions or in denying the Doctors' requested modification. The challenged instructions correctly state the law, and the jury was clearly and adequately informed that only a *material* breach by the Doctors could defeat their breach of contract claim against EpiCept. Accordingly, the district court did not abuse its discretion in denying the Doctors' request for a new trial on this ground.

**3.**

The dissent takes issue with these instructions, but for reasons not advanced by the Doctors. The Doctors do not argue that the definition of materiality was "wholly inadequate." Nor do the Doctors argue that the definition of material breach—defeating the purpose of the contract—is incorrect as a matter of New Jersey law. They do not take issue with the fact that the instructions did not include the factors from the Second Restatement mentioned in the third footnote in the New Jersey Model Instructions. The Doctors had the obligation to raise these issues if they wanted the trial court to consider them, and they failed to do so. Nor do they raise these issues on appeal. We have noted:

> There are . . . important reasons for holding that an appellant waives an issue if it fails to

provide argument about the issue in its opening brief. Rules are enforced to deter the type of improper, or inattentive, conduct that occurred here. Moreover, "appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."

*Brown v. Rawson-Neal Psychiatric Hosp*., 840 F.3d 1146, 1149 (9th Cir. 2016) (quoting *United States v. Mageno*, 762 F.3d 933, 954–55 (9th Cir. 2014) (Wallace, J., dissenting)).

**4.**

Finally, we reject the Doctors' challenge to the jury instructions, or lack thereof, relating to EpiCept's position at trial that even if it had breached the Agreement, the Doctors were not entitled to return of their patents as a remedy because the Doctors had not complied with the Agreement's 90-day notice-to-cure provision. The Doctors contend that the district court erred by not including their proposed special instructions on waiver, adoptive admissions, and materiality in connection with this issue. But EpiCept prevailed on the basis that the Doctors materially breached the contract by failing to disclose Dr. Flores's use of NP-2 on burns. Thus, even assuming that the jury was not properly instructed regarding the legal import of EpiCept's failure to respond to the Doctors' written communications or the Doctors' compliance with the 90-day notice-to-cure provision, those errors were harmless. *See Cheffins v. Stewart*, 825 F.3d 588, 596 (9th Cir. 2016).

**B.**

In addition, the Doctors challenge the district court's response to the question posed by the jury during deliberations, which they characterize as "nearly non-responsive and cursory." The jury queried: "Was the burn treatment (patient) before or after the agreement was entered? Does it matter? Specifically to plaintiffs [sic] failure to do what contract required." The jury thus asked the court to resolve a factual issue—whether the Doctors' breach was material—that the jury was charged with deciding. The court properly responded by referring the jury both the evidence presented at trial and the instructions the court previously gave.

"The Supreme Court has clearly stated that it is reversible error for a trial judge to give an answer to a jury's question that is misleading, unresponsive, or legally incorrect." *United States v. Anekwu*, 695 F.3d 967, 986 (9th Cir. 2012) (quoting *United States v. Frega*, 179 F.3d 793, 810 (9th Cir. 1999)). "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Id.* (quoting *Frega*, 179 F.3d at 809). But we have also recognized that "a trial judge . . . enjoys wide discretion in the matter of charging the jury," and that "discretion carries over to a trial judge's response to a question from the jury." *Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003) (citations and internal quotations omitted). "Because the jury may not enlist the court as its partner in the factfinding process, the trial judge must proceed circumspectly in responding to inquiries from the jury . . . ." *Id.* (quoting *United States v. Walker*, 575 F.2d 209, 214 (9th Cir. 1978)). Often the most prudent approach, under such circumstances, is to "fram[e] responses in terms of supplemental instructions rather than

following precisely the form of question asked by the jury." *Id.* (quoting *Walker*, 575 F.2d at 214). When the jury's question does not indicate that "the jurors were affirmatively interpreting the law incorrectly," *Anekwu*, 695 F.3d at 987, and the court's original instructions provide a correct statement of the law and "generally address[] the jury's question," a district court acts "within its discretion by simply referring the jury to the instructions they had already been given," *Johnson*, 351 F.3d at 995 (citing *United States v. McCall*, 592 F.2d 1066, 1068–69 (9th Cir. 1979); *United States v. Collom*, 614 F.2d 624, 631 (9th Cir. 1979); *Wilson v. United States*, 422 F.2d 1303, 1303–04 (9th Cir. 1970); *Davis v. Greer*, 675 F.2d 141, 145–46 (7th Cir. 1982)).

Here, the district court's original instructions to the jury were adequate and accurately stated New Jersey law, and the jury's question does not indicate that the jury was interpreting the law incorrectly. Rather, the question indicated that the jury sought to enlist the judge as its partner in determining and interpreting the facts. The district court did not abuse its discretion when it refused to invade the province of the jury, and instead referred the jury back to the instructions already given and the evidence presented at trial.

## C.

The Doctors raise two challenges to the verdict's evidentiary basis. First, they contend that there was insufficient evidence to support the verdict, and second, they argue that the district court abused its discretion in finding that the verdict was not contrary to the clear weight of the evidence. Before the district court, the Doctors brought a motion for a new trial under Federal Rule of Civil Procedure 59, but did not file a motion for judgment as a matter of law

under Federal Rule of Civil Procedure 50(a) or (b). "[A] post-verdict motion under Rule 50(b) is an absolute prerequisite to any appeal based on insufficiency of the evidence." *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007) (citing *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006)). The Doctors waived their right to directly challenge the sufficiency of the evidence by failing to make the appropriate Rule 50 motions. *See id.* We thus assess only the trial court's denial of the Doctors' motion for a new trial under Rule 59.

Under Rule 59, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Such reasons may include a "verdict [that] is contrary to the clear weight of the evidence," a verdict "based upon false or perjurious evidence," or "to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000) (citations omitted). We review the trial court's determination that the verdict was not against the clear weight of the evidence for an abuse of discretion. *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010). The district court's denial of a Rule 59 motion on this basis is "virtually unassailable. In such cases, we reverse for a clear abuse of discretion only where there is an *absolute absence of evidence* to support the jury's verdict." *Id.* (emphasis in original) (quoting *Desrosiers v. Flight Int'l of Fla., Inc.*, 156 F.3d 952, 957 (9th Cir. 1998)).

New Jersey law provides that a party to a contract "may be considered to have committed a material breach" when, "during the course of performance," he "fails to perform []essential obligations under the contract . . . ." *Medivox Prods., Inc. v. Hoffmann-La Roche, Inc.*, 256 A.2d 803, 809

(N.J. Super. Ct. Law Div. 1969). And, it provides, "[w]here a contract calls for a series of acts over a long time, a material breach may arise upon a single occurrence or consistent recurrences which tend to 'defeat the purpose of the contract.'" *Id.* (quoting *Winfield Mut. Housing Corp. v. Middlesex Concrete Prods. & Excavating Corp.*, 120 A.2d 655 (N.J. Super. Ct. App. Div. 1956)).

The district court concluded that EpiCept presented sufficient evidence, through the testimony of the Doctors and Peter Golikov, that Dr. Flores's treatment of burn victims was a material breach of the Agreement under New Jersey law. This conclusion was by no means an abuse of discretion. The two witnesses who negotiated the contract both testified that the clause requiring the Doctors to inform EpiCept of improvements to the patents practiced by the Doctors was important. Dr. Crowley testified that "the goal of EpiCept was to control all of the world patent rights on topical Ketamine, and with that portfolio, they would be much more successful than someone who didn't own all the intellectual property rights. They didn't have to worry about assignment issues, infringement issues, none of that." He also testified that he understood that "EpiCept was buying not only the two patents but also all improvements thereto . . . ." Dr. Flores testified that he used the patented formula to treat burn patients, and Dr. Crowley confirmed that Dr. Flores's use of NP-2 to treat burn pain was an "improvement" of the patent. Dr. Crowley testified that he "understood that providing the information to EpiCept about improvements was important to EpiCept because it could either help them get through the FDA process or potentially apply for a new indication with the FDA . . . ." Nonetheless, all three witnesses confirmed that disclosure was never made.

Golikov, the President and COO of EpiCept who negotiated the contract on EpiCept's behalf, testified that:

> The purpose of the improvements clause in any agreement is to sort of have some confidence that after you pay all this money for a particular patent that there isn't something around the corner that is slightly better. So, you know, it's a way of making a fair deal for the licensor and licensee to understand that what they're getting is what they're getting, and there's not something better that they don't know about, or if there is something better 10 days later, then for all that compensation, you would get rights to it.

He further testified that he would want to know about improvements that were practiced "because it could potentially affect the patient population in human trials. It could be a better or worse population. We certainly would like to know . . . ." Finally, he testified that EpiCept would not have signed the contract if that particular clause was not included.

The dissent, however, suggests that this evidence regarding the purported "improvement" is not persuasive. But whether a breach is material is a question for the jury to decide, *Magnet Res.*, 723 A.2d at 982, not an appellate court, and at trial the Doctors themselves recognized that the evidence on this issue went both ways, such that it was appropriate for the jury to decide the question. Because it cannot be said that there was an *"absolute absence of evidence to support the jury's verdict," Kode*, 596 F.3d at

612, we find that the district court did not abuse its discretion in denying the Doctors' motion for a new trial.

## D.

The Doctors finally challenge the district court's exclusion of their expert witness, who was to testify regarding the Doctors' damages. "We review a district court's evidentiary rulings, such as its decisions to exclude expert testimony . . . for an abuse of discretion, and a showing of prejudice is required for reversal." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 859 (9th Cir. 2014). Pederson was originally to offer opinions not only on whether the Doctors sustained damages, but on whether EpiCept breached its contractual obligations to the Doctors, whether EpiCept's efforts were commercially reasonable, and whether the Doctors could have mitigated their damages. After EpiCept moved to exclude Pederson's testimony in its entirety, the trial court concluded that the Doctors opposed only Pederson's exclusion as a damages expert. The district court thus deemed the Doctors "to have admitted that Mr. Pederson" was not qualified to opine on other topics in this litigation. It is not clear whether the Doctors contend, on appeal, that the district court erred in excluding Pederson's testimony in its entirety, or only on the issue of damages. However, even assuming that the district court erred in excluding Pederson from testifying on all of the topics included in his expert report, that error was harmless in light of our affirmance of the jury's verdict finding EpiCept not liable. The Doctors do not argue, and the record does not reflect, that any of Pederson's proposed testimony would have any impact on the jury's determination that the Doctors failed to do what the contract required them to do.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM.**

---

WARDLAW, Circuit Judge, dissenting in part:

EpiCept's claim that Plaintiffs materially breached the parties' agreement by using their patent to treat a few burn victims was the legal equivalent of a Hail Mary pass.  It worked—miraculously, one might say.  But EpiCept was aided by two significant errors on the part of the district court which require reversal and a new trial.  First, the jury's verdict was not supported by substantial evidence because no rational jury could find material breach on the evidence presented.  Second, the district court inadequately instructed the jury on this claim.[1]  Our failure to correct these errors will only increase uncertainty, and by extension bargaining costs, for contracting parties.

A material breach is one that "defeats the purpose of the contract," *Magnet Res., Inc. v. Summitt MRI, Inc.*, 723 A.2d 976, 981 (N.J. Super. Ct. App. Div. 1998) (internal quotation marks omitted), leaving the promisee with "something substantially less or different from that for which he or she bargained," 23 *Williston on Contracts* § 63:3 (4th ed. 2017).[2]

---

[1] I dissent only with respect to the jury instruction and substantial evidence issues.

[2] The Restatement provides the following factors for determining whether a breach is material:

Whether a breach is material is generally a question of fact for the jury. *Magnet Res.*, 723 A.2d at 982. However, if this question "admits of only one reasonable answer" in a given case, "the court should intervene and resolve the matter as a question of law." 23 *Williston on Contracts* § 63:15 (4th ed. 2017) (citing *Parker v. Byrne*, 996 A.2d 627 (R.I. 2010)).

Here, there is only one reasonable answer: The clear weight of the evidence demonstrates Plaintiffs' breach was not material. Indeed, there is *no* record evidence that Flores's treatment of a few burn patients with the patented formula harmed EpiCept at all, much less defeated the purpose of the contract. EpiCept concedes that it decided to stop work on the NP-2 patent because its time was better spent on drug candidates that were further along in development. EpiCept

(a)  the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b)  the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c)  the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d)  the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(3)  the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) Contracts § 241 (Am. Law Inst. 1981).

does not even attempt to argue that its strategy would have changed had it known of Flores's use of the product on burn victims. That the majority manages to find a material breach where there is not even a claim for damages is strange indeed. *See, e.g.*, 23 *Williston on Contracts* § 63:3 ("In many cases, a material breach of contract is proved by the established amount of monetary damages flowing from the breach.")

The majority incorrectly reasons that the jury's finding of material breach was supported by substantial evidence, pointing to testimony that the use of NP-2 constituted an "improvement" and testimony that it was an important clause in the agreement. And I agree with the majority, that if this were the appropriate inquiry, then evidence was undoubtedly sufficient to find material breach. However, the question is not the significance of the breached *provision*—an issue courts are ill-equipped to determine—but rather the significance of the *actual breach*. We must ask what EpiCept actually lost, not what it might have lost. *See, e.g.*, 23 *Williston on Contracts* § 63:3 ("In many cases, a material breach of contract is proved by the established amount of monetary damages flowing from the breach."). Accordingly, if we ask what EpiCept lost by the Plaintiffs' failure to disclose their use of NP-2 on burns, the answer is "nothing."

The majority's holding that a breach is material any time an important contractual term is breached would render substantially all breaches material. For example, in a contract with a single term, to "build a house with a ruby red roof," painting the roof maroon would be a material breach because the term "house with a red roof" is crucially important—indeed, it is the only thing the offeror receives from the contract. But this is exactly the kind of situation the material breach doctrine is designed to avoid. Instead of

holding that the offeror has no duty to pay the contractor because he painted the roof maroon, a court will simply reduce the money owed by the cost of repainting the roof the desired color.

Accordingly, I would find that the verdict was not supported by substantial evidence, and that the district court therefore abused its discretion in denying Plaintiffs' Rule 59 motion for a new trial.

I would also hold that the district court abused its discretion in failing to properly instruct the jury on the issue of material breach. The majority blithely asserts that the Plaintiffs waived this argument by failing to object to the jury instructions at trial. This is a blatant misrepresentation of the record. In fact, Plaintiffs vociferously objected. The district court refused Plaintiffs' pleas: "At this point, I leave it the way it is. Your objection is highly noted."

Each party claimed that the other was in material breach: Plaintiffs as part of their prima facie case, EpiCept as an affirmative defense. In Plaintiffs' prima facie case, the district court gave the jury a modified version of the New Jersey model instruction on breach, including four paragraphs explaining the concept of material breach in exhaustive detail. But the court inexplicably refused Plaintiffs' counsel's request for a substantially similar instruction on EpiCept's affirmative defense. Instead, the court offered the following instruction, which is amended for clarity:

> To decide [whether EpiCept was excused from performance], you must determine whether . . . [t]he failure to disclose the treatment of burn victims with NP2 in writing

to EpiCept was material. *A failure to disclose is material if it defeats the purpose of the contract.*

This instruction was wholly inadequate. While courts may issue customized jury instructions so long as they "fairly and adequately cover the issues presented," *United States v. Peppers*, 697 F.3d 1217, 1220 (9th Cir. 2012), the district court's instructions did not come close to doing so. Judges trained in the law struggle to apply the same definition of "material breach" that the court gave the jury.[3] This difficulty is precisely why the Restatement, which New Jersey's sanctioned jury instruction quotes in full, uses a detailed five-factor test, *see* Restatement (Second) Contracts § 241, and why the bulk of the New Jersey model instruction on breach is devoted to explaining the concept of *material* breach—92 percent by word count. N.J. Model Civ. Jury Instruction 4.10L (2017).

New Jersey strongly favors the use of model jury instructions, *see State v. R.B.*, 183 N.J. 308, 325 (2005), and there was particular reason for giving the model instruction here. The district judge's statement that jurors would have found a more detailed explanation than the one he gave "confusing," does not square with his assent to four paragraphs of explanation on the same issue in the instruction on Plaintiffs' prima facie case.

The majority reasons that the district court's instructions were sufficient because Plaintiffs could have told the jury to

---

[3] *See* Eric G. Andersen, *A New Look at Material Breach in the Law of Contracts*, 21 U.C. Davis L. Rev. 1073, 1091 (1988) ("An 'essence of the contract' approach to materiality, of course, is [not useful].")

apply the instruction given on Plaintiffs' prima facie case to EpiCept's affirmative defense, as well.  However, the majority cites no authority for the curious proposition that an otherwise faulty instruction is acceptable so long as the trial court does not prevent the challenging party from arguing the issue to the jury.  I sincerely doubt any exists.  The judge is the authority on the jury instructions it gives; the jury necessarily gives less credence to the advocates' descriptions of the law, especially where those descriptions appear to conflict with the judge's instructions.

This case is a good illustration of how little understood the concept of material breach is among lawyers and judges[4]—and how important it is to fully instruct lay jurors in it.  The district court initially granted EpiCept's motion for summary judgment on the ground that Plaintiffs' breach excused EpiCept from performance.  A different panel of our Court reversed on appeal, correctly pointing out that only *material* breaches excuse a counterparty's performance. *Crowley v. EpiCept Corp.*, No. 12-55376, 547 F. App'x 844, 846 (9th Cir. Dec. 3, 2013) (unpublished).  On remand, the district court again demonstrated its failure to appreciate the nuances of the doctrine.  The disagreement among the judges

---

[4] *See* William J. Geller, *The Problem of Withholding in Response to Breach: A Proposal to Minimize Risk in Continuing Contracts*, 62 Fordham L. Rev. 163, 192 (1993) ("Courts have been accused of determining the materiality of breach without any coherence, rationality, or justification."); Amy B. Cohen, *Reviving Jacob and Youngs, Inc. v. Kent: Material Breach Doctrine Reconsidered*, 42 Vill. L. Rev. 65, 67 (1997) ("The problem with the current application of material breach doctrine is in large part a result of an absence of focus. The courts apply the test without articulating any foundation or context on which it is based.")

on this panel is only further evidence of the concept's difficulty.

This is not a purely academic concern. The confusion engendered by decisions like ours today has real-world effects. Uncertainty about when courts will find a material breach increases the cost of private transactions, which in turn decreases economic welfare. The majority's disposition only adds to this uncertainty, and perpetuates an injustice.[5]

I respectfully dissent.

---

[5] Because the jury found that Plaintiffs materially breached the contract, it did not reach Plaintiffs' argument that EpiCept was in breach. Had Plaintiffs prevailed on this argument, they may have been entitled to compensatory damages and/or the return of their patents.