**KAISER STEEL CORPORATION,**
**Plaintiff/Appellee/Cross-Appellant,**

v.

**FRANK COLUCCIO CONSTRUCTION COMPANY, et al.,**
**Defendants/Appellants/Cross-Appellees.**

Nos. 84–4424, 85–3515.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1986.

Decided Jan. 28, 1986.

Designated for Publication
March 26, 1986.

Richard M. Stanislaw, John S. Riper, Oles, Morrison & Rinker, Seattle, Wash., for plaintiff/appellee/cross-appellant.

Albert Malanca, Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern, Tacoma, Wash., Jeffrey Smyth, Seattle, Wash., for defendants/appellants/cross-appellees.

Appeals from the United States District Court for the Western District of Washington, Seattle Division.

Before WRIGHT, CANBY and WIGGINS, Circuit Judges.

## OPINION *

CANBY, Circuit Judge:

Frank Coluccio Construction Company and its co-venturer S & M ("Coluccio") appeal an adverse judgment of $4.78 million entered upon a jury verdict for Kaiser Steel on a claim of promissory estoppel. Coluccio also appeals the trial court's refusal to grant a new trial. We affirm.[1]

## BACKGROUND

This diversity action arises from a dispute over some large steel pipe that was to be used to complete a $30 million construction project for the Snohomish County Public Utility District in the State of Washington. The project called for installation of several miles of ten-foot diameter steel pipe. In December 1981, Coluccio won a contract to complete one phase of the project based on a low bid that incorporated a bid from Kaiser as supplier of the pipe.

In the months that followed, Kaiser and Coluccio began negotiations to formalize their agreement. Coluccio wished to wait until its contract with the PUD was signed before signing anything with Kaiser. Nonetheless, oral representations and actions by Coluccio made clear to Kaiser that it would be the pipe supplier. On March 19, 1982, the day after the prime contract was executed, Coluccio sent Kaiser a "letter of intent" that triggered Kaiser's ordering of $6 million worth of specialty steel along with certain engineering, retooling and other support services. This letter was drafted in part and approved by Coluccio's attorney, Mr. St. Louis.

In June 1982, problems arose. Apparently the parties disagreed whether certain costs associated with welding the pipe sections together in the field were included in Kaiser's quoted price. Negotiations broke down, and Coluccio finally sent a telegram terminating Kaiser as the pipe supplier. This notice was also drafted by or with the approval of Mr. St. Louis.

Coluccio completed its work on the primary contract using pipe supplied by another company. Kaiser sued for $6.6 million, alleging breach of contract, or in the alternative, promissory estoppel. The jury awarded Kaiser $4.78 million.

## DISCUSSION

### I. ATTORNEY MISCONDUCT

A. *Kaiser's Comments During Summation*

Coluccio first complains that certain comments by Kaiser's attorney during

---

\* This case was originally decided in a memorandum disposition filed January 28, 1986. At the request of an active member of this court, the case is hereby ordered published in this slightly modified form. The modifications are for clarification and are immaterial to the resolution of the case.

1. Kaiser conditionally cross-appealed the directed verdict against it on its breach of contract claim. Because of our decision on Coluccio's appeal, we need not reach Kaiser's contract claim. We also deny Kaiser's motion that we take judicial notice of certain state court pleadings in another action.

In its brief, Coluccio moved to strike portions of Kaiser's opening brief. We see no need for a formal ruling on the motion. The outcome of this appeal is unaffected by the challenged material.

summation were so improper that they warrant reversal despite Coluccio's conceded failure to object until after judgment was entered.

In *Gonzalez v. Volvo of America Corp.,* 752 F.2d 295 (7th Cir.1985), the Seventh Circuit found an attorney misconduct claim, based on inflammatory remarks by plaintiff's counsel during summation, barred by defendant's failure to make any objection before post-verdict motions. The court followed *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 238–39, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940).[2]

While neither *Socony-Vacuum* nor *Gonzalez* firmly bars relief for misconduct when no contemporaneous objection was made, they erect a high threshold. Despite Coluccio's protestations to the contrary, it has not explained its failure to object or demonstrated why the comments here were as egregious as those in *Gonzalez.* Some of the remarks by Kaiser's attorney were immoderate. Others appear to be either *de minimis* infractions or comments susceptible of more than one meaning. In any event, we find nothing in the record that stands out as fundamental error.

Nothing prevented Coluccio's attorney from raising this issue with the trial court well before the jury began its deliberations. This action would have permitted the judge to examine the alleged prejudice and to admonish Kaiser's counsel or issue a curative instruction, if warranted. The high jury award is not enough to distinguish this case from *Gonzalez.*[3] Under the circumstances here, the contemporaneous objection rule bars this claim.

**B.** *Failure to Disqualify Coluccio's Attorney*

Coluccio's March 19, 1982, letter to Kaiser and its June 1982 telegram terminating Kaiser were either written or approved by its attorney St. Louis, who later represented Coluccio at trial. Coluccio now argues that St. Louis should have been a witness and that his representation of Coluccio violated the advocate-witness rule. *See* Wash.Code Prof.Resp. Canon 5; DR 5–101(B); DR 5–102(A), (B) (West 1984).[4] Coluccio believes that Kaiser should have moved to disqualify St. Louis, that Kaiser declined so to move in order to hamper Coluccio's defense, and that the trial court should have disqualified St. Louis *sua sponte.*

As Coluccio notes, the district court generally must control the professional conduct of attorneys who practice before it. *See, e.g., Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.,* 760 F.2d 1045, 1047–48 (9th Cir.1985); *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87 (9th Cir.1983). But Coluccio points to no case, and we can find none, requiring or involving a trial court's *sua sponte* disqualification of a party's attorney under circumstances like these. Indeed, such action would run the risk of interfering with a party's qualified right to select counsel. *See, e.g., Evans v. Artek Systems Corp.,* 715 F.2d 788, 791 (2d Cir.1983); *In re Airport Car Rental Antitrust Litigation,* 470 F.Supp. 495, 502–03 (N.D.Cal.1979).

Coluccio raises the spectre of a party, knowing its opponent's attorney will be unable to testify, exploiting this situation to unfair advantage. The potential for this

---

**2.** Most circuits have held squarely that the lack of a contemporaneous objection bars a complaint in a civil appeal about alleged attorney misconduct during summation. *See, e.g., Martell v. Boardwalk Enter. Inc.,* 748 F.2d 740, 748 (2d Cir.1984); *Williams v. Butler,* 746 F.2d 431, 442–43 (8th Cir.1984), *aff'd by an equally divided court on en banc rehearing,* 762 F.2d 73 (8th Cir.1985); *Bryant v. Consolidated Rail Corp.,* 672 F.2d 217, 218 (1st Cir.1982); *cf. Porterfield v. Burlington Northern Inc.,* 534 F.2d 142, 145–46 (9th Cir.1976) (attorney misconduct during cross-examination).

**3.** Further, we note that Coluccio nowhere claims that the damage award was excessive or not supported by the evidence.

**4.** Since this appeal was filed, Washington has adopted new Rules of Professional Conduct, based on the ABA Model Rules of Professional Conduct. The new Rules, which became effective September 1, 1985, retain a version of the advocate-witness rule. *See* Wash.R.Prof.Conduct 3.7 (West 1985).

sort of abuse, however, strikes us as far less than the potential for abuse of *post facto* attacks on adverse judgments, such as the one Coluccio raises here. *See e.g., Optyl Eyewear,* 760 F.2d at 1050; *Evans,* 715 F.2d at 791–92.

## II. ADEQUACY OF THE JURY CHARGE

### A. *Alteration of Instruction Four*

■ Coluccio's first objection to the jury charge involves the court's alteration of the instruction on promissory estoppel, requiring the jury to find that injustice could be avoided only "by an award of damages to Kaiser." Coluccio urges that the instruction should have required the jury to find that injustice could be avoided only by "enforcement of the promise." The district court stated that, in this case, the language referring to damages would be less confusing to the jury since specific enforcement of the promise was not possible. We believe it was within the trial court's discretion to so conclude. The construction project was complete by the time of trial. Realistically, no remedy other than damages was possible. The instruction properly ensured that the jury understood the issue and was not misled. *See Van Cleef v. Aeroflex Corp.,* 657 F.2d 1094, 1099 (9th Cir.1981). The court was not required to instruct in the precise language offered by Coluccio. *Mitchell v. Keith,* 752 F.2d 385, 389 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985).

### B. *Refusal to Include Proposed Instructions*

■ Next, Coluccio complains of the district court's refusal to include several instructions it suggested. We find the trial court did not abuse its discretion in finding the requested instructions unnecessary.

### 1) *Proposed Instruction 2*

Despite the court's use of one definition of "promise" suggested by Coluccio (Court Instruction 5), Coluccio argues that the court should also have given Proposed Instruction 2. The proposed instruction was redundant. Court Instruction 5 parallels the first phrase of the proposal, while the reliance issue is covered in Court Instruction 4. The instructions that were given permitted the jury intelligently to determine the issues; we will not disturb the judgment just because further amplification was refused. *See Ragsdell v. Southern Pac. Transp. Co.,* 688 F.2d 1281, 1282–83 (9th Cir.1982).

### 2) *Proposed Instruction 3*

Coluccio also requested an instruction on future intent to contract as its Proposed Instruction 3, citing *Pacific Cascade Corp. v. Nimmer,* 25 Wash.App. 552, 608 P.2d 266 (1980). But *Nimmer* does not hold that, as a matter of law, statements relating to the future can never support a promissory estoppel claim.

The district court's instructions here made it clear that, to find for Kaiser, the jury still had to find a promise, defined as a statement that something *shall* (not might) happen in the future, and justifiable reliance by Kaiser. Thus, Coluccio's theory of the case was adequately explained.

### 3) *Proposed Instruction 18*

Proposed Instruction 18 on conditional promises was not part of defendant's final set of proposed instructions submitted to the trial court. Instead, the record shows Coluccio objected to its omission in court only minutes before the jury was to be instructed, referring to its failure to raise the matter earlier as an "oversight." The court refused to give the instruction, saying "[W]e reserved all day yesterday to work on instructions and take exceptions ... and so forth. This is the first time an argument has been made on this." Thus, the district court could certainly find Coluccio had waived its objection. *Cf. Likins-Foster Monterey Corp. v. United States,* 308 F.2d 595, 603 (9th Cir.1962) (trial court properly refused to recall jury to give an omitted instruction where no instruction was timely requested and adequate instruction had been given on issue).

The definition of "promise" in the district court's Instruction 5 was mandatory in tone, requiring the jury to reject Coluccio's claim that Coluccio used merely precatory language. Thus, the jury charge as a whole conveyed the conditional promise theory, and Proposed Instruction 18 was unnecessary. Because the objection was tardy and because the jury could understand Coluccio's theory of the case, the verdict will not be disturbed.

## CONCLUSION

Any attorney misconduct that occurred in this case did not constitute fundamental error. The jury charge, taken as a whole, adequately informed the jury on the law of promissory estoppel as well as on Coluccio's theory of the case. The judgment is AFFIRMED.

