**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DENNIS GERALD CLAIBORNE,
*Plaintiff-Appellant*,

v.

BLAUSER, Correctional Officer;
S. MARTIN, Correctional
Officer,
*Defendants-Appellees.*

No. 16-16077

D.C. No.
2:10-cv-02427-VAP

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Virginia A. Phillips, Chief District Judge, Presiding

Argued and Submitted February 6, 2019
San Francisco, California

Filed June 28, 2019
Amended August 14, 2019

Before:  Sidney R. Thomas, Chief Judge, Richard A. Paez,
Circuit Judge, and Gary Feinerman,* District Judge.

---

*The Honorable Gary Feinerman, United States District Judge for
the Northern District of Illinois, sitting by designation.

Order;
Opinion by Judge Paez

## SUMMARY[**]

### Prisoner Civil Rights

The panel reversed the district court's denial of a motion for a new trial and remanded in an action brought pursuant to 42 U.S.C. § 1983 by a convicted state inmate who alleged that he was shackled without justification during his three-day trial on his Eighth Amendment excessive force and deliberate indifference to medical needs claims.

The panel first noted that although the inmate did not object to the shackling during trial, he raised the issue in support of his motion for a new trial. The panel applied plain error review.

The panel held that because the inmate's dangerousness and flight risk were central issues at the trial, the district court plainly erred in allowing him to be visibly shackled without any showing of a sufficient need for such restraints. The panel held that on remand, the district court would have discretion to impose shackling during the new trial, but it could only do so after a full hearing at which officers showed a compelling need for security and the court considered any less restrictive alternatives.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Jeremy M. Christiansen (argued), Gibson Dunn & Crutcher LLP, Washington, D.C.; J. Brett Bylund and Blaine H. Evanson, Gibson Dunn & Crutcher LLP, Irvine, California; for Plaintiff-Appellant.

Jaime Ganson (argued) and Arthur B. Mark III, Deputy Attorneys General; Neah Huynh, Acting Supervising Deputy Attorney General; Monica N. Anderson, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Sacramento, California; for Defendants-Appellees.

---

**ORDER**

The opinion filed in this case on June 28, 2019 is amended by replacing the text of footnote 7 on page 28, *Claiborne v. Blauser*, 928 F.3d 794, 810 n.7 (9th Cir. 2019), with the following paragraphs:

> Because we remand for a new trial on the shackling claim, we do not address the merits of Claiborne's evidentiary arguments that the district court erred in barring his testimony about the ADA, preventing him from introducing or testifying about his medical records, and denying his request for a medical expert. The district court may revisit these issues if Claiborne raises them again at the new trial.
>
> We note, however, that the district court appears to misstate the law when it denied

Claiborne's request for a medical expert under Federal Rule of Evidence 706(a). Although the district court correctly recognized that Rule 706(a) provides discretion to appoint a neutral expert witness, *see McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991), *vacated on other grounds sub nom. Helling v. McKinney*, 502 U.S. 903 (1991), *judgment reinstated*, 959 F.2d 853 (9th Cir. 1992), *aff'd*, 509 U.S. 25 (1993), the district court seemed to categorically limit the relevance of a medical expert to testifying about a plaintiff's *current* condition. Yet courts have regularly considered requests for and appointed experts to review medical records and testify about *prior* medical needs and treatment in deliberate indifference cases. *See Gorton v. Todd*, 793 F.Supp.2d 1171, 1179–81 (E.D. Cal. 2011) (collecting cases). Moreover, a medical expert can help with factfinding in excessive force claims because "the extent of injury suffered by an inmate is one factor that may suggest 'whether the [defendant's] use of force could plausibly have been thought necessary' in a particular situation." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). If Claiborne renews his request for appointment of a neutral medical expert on retrial, the district court should weigh these considerations in exercising her discretion. *See McKinney*, 924 F.2d at 1511; *see also Gorton*, 793 F.Supp.2d at 1185–86.

The Amended Opinion is filed concurrently with this order.

With the filing of the Amended Opinion, the panel has unanimously voted to deny the Defendants-Appellees' petition for panel rehearing. No further petitions for rehearing may be filed.

## OPINION

PAEZ, Circuit Judge:

The law has long forbidden the routine use of visible shackling during a criminal defendant's trial. *Deck v. Missouri*, 544 U.S. 622, 626 (2005). Visible shackling undermines the presumption of innocence, impedes the jury's factfinding process, hampers presentation of a defense, and affronts the dignity and decorum of judicial proceedings. *Id*. at 630–32. In this civil rights case under 42 U.S.C. § 1983, we consider whether the unjustified shackling of a convicted state inmate during his three-day trial on Eighth Amendment excessive force and deliberate indifference claims deprived him of a fair trial in violation of the federal constitution.[1] Although the inmate did not object to the shackling during trial, he raised the issue in support of his motion for a new trial, which the district court denied.

We hold that the district court abused its discretion in denying a new trial. Because the inmate's dangerousness and flight risk were central issues at the trial, the district court plainly erred in allowing him to be visibly shackled without any showing of a sufficient need for such restraints.

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291.

*See Tyars v. Finner*, 709 F.2d 1274, 1284–85 (9th Cir. 1983). We therefore reverse and remand for a new trial.

## I.

This appeal arises out of a lawsuit filed by Dennis Gerald Claiborne who, proceeding pro se, sued Correctional Officers Jemini Blauser, Greg Martin, and other individual officials under Section 1983 for the use of excessive force and deliberate indifference to his medical needs.

## A.

Claiborne is a 63-year-old California state prison inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). He is serving a 60-years-to-life sentence under California's Three Strikes Law for attempted burglary and receipt of stolen property. *People v. Claiborne*, No. B260391, 2015 WL 5146746, at *1 (Cal. Ct. App. Sept. 2, 2015).

Claiborne is mobility impaired due to a right knee replacement in 2007 and ensuing chronic problems with that knee. Given his condition, Claiborne participates in the CDCR Disability Placement Program and receives certain accommodations in prison: he is allowed to use a cane; he is restricted to housing on the lower level, with no stairs; and, when escorting Claiborne within the institution, correctional staff must use "waist chains" and choose "relatively level terrain and no obstructions in the path of travel." Waist chains are different from traditional handcuffs; whereas the latter are typically applied behind the back, the former allow a mobility impaired inmate to keep his hands at his sides during an escort, which lets him use any prescribed accommodation devices like a cane. CDCR documents and conveys information about Claiborne's accommodations to

prison officials through physician orders known as medical accommodation "chronos" in his file. Claiborne also wears a green vest to alert officers that he is mobility impaired.

The incident between Claiborne and Officers Blauser and Martin took place on May 3, 2010, while Claiborne was housed at California's High Desert State Prison, a Level Four security prison. As Claiborne was waiting for his medication in the morning "pill line," Correctional Officer Daniel McBride, stationed in an observation tower, believed he saw Claiborne socializing with other inmates in the line. Officer McBride called Officer Blauser, who was working in Claiborne's housing unit along with her partner, Officer Martin, and asked Blauser to counsel Claiborne for unnecessarily lingering in the pill line. After waiting thirty minutes in the pill line, Claiborne received his medication and returned to his housing unit where he was admonished by Officer Blauser. She decided to "put a cap" on Claiborne's door, meaning he would spend the rest of the day locked up in his cell. Because Claiborne had intended to present at a Bible study group later that day, he asked to speak with the sergeant, Officer Blauser's supervisor, to contest the punishment and explain that he had been properly waiting in line and not socializing.

The account of the facts diverge drastically from there. According to Claiborne, he was acting respectfully toward Officer Blauser when she told him to "cuff up." He complied and, as Officers Blauser and Martin started to escort him, Claiborne informed them that it was difficult for him to walk and use his cane with his hands cuffed behind his back. He mentioned his chrono for waist chains but Officer Blauser told Officer Martin to take Claiborne's cane. Officer Martin said he would help hold Claiborne up as the three of them walked to the program office to speak with the

sergeant. Claiborne, however, had difficulty walking with Officers Blauser and Martin. They escorted him straight across the yard, rather than along the sidewalk circling the yard, despite Claiborne's chrono providing for level terrain. Because the yard was uneven, Claiborne hyperextended his right leg, causing his knee to give out partway across the yard. Claiborne lost balance and shifted rightward, causing Officer Blauser to order him to stop resisting. Claiborne tried to explain that he was not resisting and that his knee was bothering him because the officers were pulling him too quickly.

When the three were almost at the program office, Claiborne's right leg hyperextended again as he tried to pick the leg up three to five inches from the dirt yard onto the pavement. Because he had no cane to catch himself, Claiborne leaned to his right again, causing Officer Blauser to shout "he's resisting" and pull him down to the ground. She jumped on his right side, including his replaced knee, and pulled his hair and hit him in the face a few times. Other officers quickly rushed to the scene and Claiborne heard individuals ask, "Where's his cane?" and "Why isn't he in waist chains?" Claiborne was eventually taken into a holding cell and then interviewed by a sergeant, which was recorded by a video camera. Before turning on the camera to record the interview, the sergeant warned Claiborne that if he reported excessive force, he would be taken to the "hole," in other words, administrative segregation, for an unknown amount of time. Worried about whether his medical needs would be met in the hole, Claiborne eventually stated on camera, after extended back-and-forth with the sergeant, that there was no excessive force used against him.

Officers Blauser and Martin presented a different account. They were both aware of Claiborne's mobility impairment at the time of the incident. According to Officer Blauser, while she counseled Claiborne for lingering in the pill line, he became "really aggravated" and started raising his voice at her, causing her to feel uncomfortable. Claiborne then walked toward her while holding, not using, his cane. Because she did not feel safe, Officer Blauser told Claiborne to "cuff up," and he immediately turned around and complied. She asked her partner, Officer Martin, to assist her with escorting Claiborne to the program office. Officer Martin took Claiborne's cane, and they each supported him by holding onto his bicep or arm on each side. Neither Officer Blauser nor Officer Martin recalled Claiborne saying anything about needing to use waist chains. Moreover, because it would have taken a few extra minutes to obtain waist chains, Officer Blauser decided to use handcuffs due to Claiborne's aggression and defiance of her order to return to his cell.

According to Officers Blauser and Martin, they escorted Claiborne straight across the yard because it was the quickest and most direct path to the program office and avoided walking amongst other inmates. They escorted him slowly and did not perceive any problems with his walking. Rather, they believed that Claiborne tried to break away from them twice, once halfway across the yard, and a second time close to the program office. At first, Officer Blauser ordered Claiborne not to pull his arm away but he continued to act aggressively, yelling and trying to pull away from her. When Claiborne pulled his arm away from her a second time, Officer Blauser decided to pull him down and called a "code one" over the radio. Officers Blauser and Martin used their weight to hold Claiborne down on the ground. They denied that Officer Blauser jumped on Claiborne, pulled his

hair or punched him in the face. After other officers escorted Claiborne away, Sergeant Officer Kenneth Gullion followed protocol and conducted a video-recorded "use-of-force" interview, asking Claiborne about what took place. Sergeant Gullion did not remember what happened prior to interviewing Claiborne on video. A separate officer wrote Claiborne up for a rule violation, resisting a peace officer.

Shortly after the incident, a nurse examined Claiborne and completed a medical report, noting that he had two abrasions, one each on his left knee and left cheek. Afterward, Claiborne experienced more problems with his right knee, and doctors determined that he had significant injuries, including bursitis. Following a series of evaluations, Claiborne was assessed to have "[f]ailed right total knee arthroplasty." He underwent a revision procedure in 2012, but was told that his knee did not respond properly to the surgery and could not be fixed any more. Claiborne also had surgery on one of his shoulders in July 2015, when he was told that he waited too long to fix it.

## B.

After exhausting the prison's administrative process, Claiborne filed suit in district court. Proceeding pro se, he sued Officers Blauser, Martin and other individual officers under Section 1983 for various claims, including the use of excessive force and deliberate indifference to his medical needs in violation of his Eighth Amendment rights. The other named defendant officers and other claims, including battery, negligent infliction of emotional distress and intentional infliction of emotional distress, were eventually dismissed from the case. After the district court denied cross-motions for summary judgment, the case proceeded to trial on the two Eighth Amendment claims against Officers Blauser and Martin.

The trial lasted three days, at the start of which the district court noted, outside of the jury's presence, that Claiborne was shackled. Claiborne testified on his own behalf, and two fellow inmates also testified on his behalf. The defense presented testimony from six officers including Officers Blauser and Martin, the tower guard officer (McBride), and Sergeant Gullion. The jury reached a verdict for both defendants on both claims.

Claiborne filed a timely motion for new trial and relief from judgment, raising various arguments. Most relevant to our analysis, Claiborne argued that he was entitled to a new trial under Federal Rule of Civil Procedure 59(a) because he was visibly shackled while litigating his case in front of the jury. He also argued for relief from judgment under Federal Rule of Civil Procedure 60(b) because the district court barred his testimony about the Americans with Disabilities Act ("ADA"), prevented him from introducing or testifying about his medical records, and denied his request for a medical expert. The district court dismissed all the arguments and denied the motion.

## II.

When reviewing denial of a motion for new trial under Federal Rule of Civil Procedure 59(a), our default is to review for abuse of discretion. *See Hung Lam v. City of San Jose*, 869 F.3d 1077, 1084 (9th Cir. 2017). But here, Claiborne did not object to his shackling at trial so we must address the appropriate standard of review.

Errors not objected to at trial are generally subject to waiver or forfeiture. "Forfeiture is the failure to make a timely assertion of a right, whereas waiver is the intentional relinquishment or abandonment of a known right." *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc)

(internal quotation marks omitted); *see also Crowley v. EpiCept Corp.*, 883 F.3d 739, 748 (9th Cir. 2018) (per curiam) (applying same standard in civil context). "Forfeited rights are reviewable for plain error, while waived rights are not." *Id.*

Under plain error review, we may reverse only where: (1) there was an error; (2) the error was obvious; (3) the error affected substantial rights; and, (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1018–19 (9th Cir. 2014) (en banc). In other words, plain error requires reversal where "review is necessary to prevent a miscarriage of justice." *Draper v. Rosario*, 836 F.3d 1072, 1085 (9th Cir. 2016) (internal quotation marks omitted).

Defendants argue that Claiborne forfeited the error because he failed to object to his shackling at trial, and so, his claim should be subject to plain error review.[2] Claiborne contends that plain error is inapplicable because he timely raised the shackling issue in his motion for a new trial, and the district court addressed the claim on the merits, holding that it would have imposed shackling over any objection

---

[2] We find no merit to defendants' alternative argument that Claiborne invited the error. We impose a high standard for applying the invited error doctrine. *See United States v. Lindsey*, 634 F.3d 541, 555 (9th Cir. 2011) (noting that "in order for the invited error doctrine to apply, a [party] must both invite the error and relinquish a known right" (citing *Perez*, 116 F.3d at 845)). Claiborne's mention of his shackles in his opening statement, read in context, suggests that he was trying to introduce himself to the jury and not hide the fact that he is incarcerated. There is no indication in the record that Claiborne, who was pro se in the district court, "both invited the error, and relinquished a known right" to a fair trial without shackling. *Perez*, 116 F.3d at 845.

because Claiborne is a convicted felon serving a lengthy prison sentence.

The district court's denial of a motion for a new trial is reversible if the court made a mistake of law. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). As we elaborate below, we agree that the district court disregarded the law on shackling. However, in prior cases involving legal claims that were not raised during trial, we still undertook plain error review when reviewing a denial of a motion for a new trial.[3] *See, e.g.*, *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 517 (9th Cir. 2004) ("There is an even 'high[er] threshold' for granting a new trial where, as here, [the moving party] failed to object to the alleged misconduct during trial." (first alteration in original) (quoting *Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*, 785 F.2d 656, 658 (9th Cir. 1986))); *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) ("We will review for plain or fundamental error, absent a contemporaneous objection . . .").

The policy behind plain error review is to ensure that the parties and district court are on notice as to any alleged errors so that the court may address the objection, correct any error, and create a proper record for appeal. *See Hemmings*, 285 F.3d at 1193 (observing that "the trial judge is in a superior position to evaluate the likely effect of the alleged misconduct and to fashion an appropriate remedy"); *see also*

---

[3] This is analogous to our review of instructional error claims when there was no objection at trial. 11 Charles A. Wright et al., *Federal Practice and Procedure* § 2805 (3d ed. 2012). Under Federal Rule of Civil Procedure 51(d)(2), we review a challenge to civil jury instructions for plain error in the absence of a timely objection. *C.B.*, 769 F.3d at 1017–19.

*United States v. $11,500.00 in U.S. Currency*, 869 F.3d 1062, 1075 (9th Cir. 2017).

Here, the district court's holding on the merits—that it would have imposed shackling over any timely objection—does give us some pause as to the standard of review.**[4]** We have recognized one limited exception to plain error review in the civil context, the "pointless formality" exception. *Chess v. Dovey*, 790 F.3d 961, 970–72 (9th Cir. 2015); *see also Shorter v. Baca*, 895 F.3d 1176, 1182–83 (9th Cir. 2018). In *Chess*, we declined to apply plain error where the plaintiff was pro se and "the district court and opposing party were fully aware of the potential problem with, and would-be objection to, [a jury] instruction," even though the plaintiff did not raise the issue himself. 790 F.3d at 964. Because the district court and defendants were on notice, we concluded that "any objection by Chess would have been 'superfluous and futile,'" *id*. at 972 (quoting *Obsidian Fin. Grp. v. Cox*, 740 F.3d 1284, 1289 (9th Cir. 2014)), and we declined to "punish a pro se litigant with plain error rather than de novo review simply because he failed to say the words 'I object,'" *id*. at 971.

Claiborne, too, was pro se and the district court's post-trial ruling suggests that any timely objection would have

---

**[4]** The district court's ruling distinguishes Claiborne's situation from that in *Hemmings*, in which the defendant moved for a new trial based on inappropriate comments made by the plaintiffs' counsel in closing argument. 285 F.3d at 1192. The district court noted that it remembered the comment and "would have sustained an objection had one been made because it was totally improper." *Id*. at 1192–93. Because a timely objection would have made a difference and changed the district court's actions, application of plain error review was appropriate under the rationale of giving the trial judge an opportunity to cure any prejudice. *Id*. at 1193. That concern does not apply here.

been futile.  We recognize, however, the policy concerns behind the plain error doctrine and therefore decline to review for abuse of discretion.  *See Hemmings*, 285 F.3d at 1193 (noting that "allowing a party to wait to raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error").  Accordingly, we review for plain error.

## III.

The district court must grant a motion for a new trial where "the verdict is against the weight of the evidence," "the damages are excessive" or, "for other reasons, the trial was not fair to the [moving] party."  *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).  Here, we consider an argument based on the latter.  Claiborne, now represented by pro bono counsel, argues that he was deprived of a fair trial because he was visibly shackled in front of the jury throughout the three-day trial, and that the district court erred by denying his Rule 59(a) motion for a new trial.  Even under the more demanding plain error standard, we agree that the district court erred in denying Claiborne's motion for a new trial.

## A.

To understand why the district court plainly erred, we first review the case law on visible shackling.

It is well established that due process "forbids the use of visible shackl[ing] . . . during the guilt phase [of a criminal trial], *unless* that use is 'justified by an essential state interest.'"  *Deck*, 544 U.S. at 624 (citing *Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986); *Illinois v. Allen*, 397 U.S. 337, 343–44 (1970)).  The Supreme Court has identified "three fundamental legal principles" which are "undermined" or

"diminished" by the use of visible restraints. *Id*. at 630–31. First, the accused enjoys a presumption of innocence, which visible shackling undermines by suggesting that the defendant need be restrained. *Id*. at 630. This in turn "undermines . . . the related fairness of the factfinding process." *Id*. Second, the accused has a right to a meaningful defense from counsel. *Id*. at 631. Restraints might physically impair communication between a defendant and his counsel, or impair the defendant's participation in his own defense. *Id*. "Third, judges must seek to maintain a judicial process that is a dignified [one]." *Id*. Because "[t]he courtroom's formal dignity . . . includes the respectful treatment of defendants," "the use of shackles at trial 'affront[s]' the 'dignity and decorum of judicial proceedings that the judge is seeking to uphold.'" *Id*. (quoting *Allen*, 397 U.S. at 344).

In *Deck*, the Court held that these considerations apply with equal force to penalty proceedings in capital cases, even though "the presumption of innocence no longer applies." *Id*. at 632. Hence, before imposing restraints on criminal defendants, the trial court must take into account the particular circumstances of each case, including "special security needs or escape risks[] related to the defendant," *id*. at 633. Where the court orders visible shackling without adequate justification, "the defendant need not demonstrate actual prejudice to make out a due process violation," and the burden is on the government to "prove beyond a reasonable doubt that the shackling error complained of did not contribute to the verdict obtained." *Id*. at 635 (alterations and internal quotation marks omitted).

Prior to *Deck*, we have long recognized that the prohibition against routine visible shackling applies even when the presumption of innocence does not, including in

the civil context.  In *Duckett v. Godinez*, we anticipated *Deck* by holding that "shackling a defendant during a [capital] sentencing hearing before a jury is an inherently prejudicial practice which comports with due process only when used as a last resort to protect an essential state interest[,] such as maintaining public safety or assuring the decorum of the proceedings."  67 F.3d 734, 747 (9th Cir. 1995).  We have thus long required trial courts to engage in a two-step process before shackling a criminal defendant: "[f]irst, the court must be persuaded by compelling circumstances" that the measure is necessary to "maintain security[;]" and "[s]econd, the court must 'pursue less restrictive alternatives before imposing physical restraints."  *Id*. at 748 (internal quotation marks omitted).  We held that it was error to permit shackling *solely* on the basis that the defendant was a convicted felon, and so remanded for the district court to determine whether this constitutional error was harmless.  *Id*. at 749–50.

Notably, we reached our holding in *Duckett* "by analogy to the treatment of the shackling issue in civil cases."  *Id*. at 748 (citing *Tyars*, 709 F.2d at 1284–85; *Lemons v. Skidmore*, 985 F.2d 354, 356–58 (7th Cir. 1993); and *Holloway v. Alexander*, 957 F.2d 529, 530 (8th Cir. 1992)).  As recounted below, this court has recognized the inherent prejudice associated with unjustified shackling in civil proceedings as early as 1983, and other circuits have relied on our reasoning to expand the prohibition on routine shackling to other civil contexts.

In *Tyars*, the petitioner challenged the use of restraints to bind him in the presence of the jury during his involuntary civil commitment proceedings.  709 F.2d at 1276, 1284.  We observed that "[i]t requires no great extension of Supreme Court precedent to conclude that this may have violated his

rights under the due process clause." *Id*. at 1284. We reasoned:

> Although the criminal case precedents do not necessarily apply in a civil proceeding, we find them persuasive. The likelihood of prejudice inherent in exhibiting the subject of a civil commitment hearing to the jury while bound in physical restraints, *when the critical question the jury must decide is whether the individual is dangerous to himself or others*, is simply too great to be countenanced without at least some prior showing of necessity. In the absence of any such demonstrable or articulable necessity, and in the absence of any showing that less restrictive means not embodying the same potential for prejudice could have maintained order in the courtroom, the circumstances deprived the proceeding of the appearance of evenhanded justice which is at the core of due process.

*Id*. at 1285 (emphasis added) (alterations, internal quotation marks and citation omitted). We instructed the district court on remand to "determine whether the State has any justification . . . to support the necessity of physically restraining Tyars in the presence of the jury." *Id*. at 1285–86.

Since *Tyars*, at least four other circuits have adopted a similar test when evaluating the use of shackling in civil trials. In *Lemons*, the Seventh Circuit held that it was impermissible to rely solely on the opinion of a state corrections officer to shackle a plaintiff prison inmate in a

Section 1983 action alleging excessive force by corrections officers. 985 F.2d at 356. The plaintiff claimed that defendant officers attacked and beat him severely in his cell, while defendants asserted that the plaintiff was "ranting and raving," and had to be subdued. *Id*. at 355. The *Lemons* court cited with approval *Tyars*, *id*. at 356 n.2, and concluded that, as in the criminal context, the appearance of a civil plaintiff in handcuffs and leg irons "suggested to the jury that the plaintiff was dangerous and violent, so that whatever force the guards had used was probably necessary, and not excessive," *id*. at 359. "[S]hackles inevitably prejudiced the jury" because "plaintiff's tendency towards violence was at issue." *Id*. at 357. The court therefore remanded for a new trial and required a hearing to determine what, if any, restraints were necessary. *Id*. at 359.

The Eighth Circuit in *Holloway* also recognized that, as a general rule, inmate civil plaintiffs should not have to appear in court in shackles unless there was a showing of need and steps to mitigate any potential prejudice. 957 F.2d at 530. The court found no prejudice in *Holloway* because the plaintiff challenged the constitutionality of living conditions in the state prison, which did not raise the plaintiff's dangerousness as a merits issue at trial. *Id*. (noting that "[t]he fact that Holloway and his witnesses were security risks inside the courtroom was simply not a factor relevant to [the jury's] decision" of whether the "living conditions inside the prison were cruel and inhumane").

Relying on *Tyars*, *Lemons* and *Holloway*, the Second Circuit held that the Supreme Court's concerns with shackling in criminal proceedings apply to parties in civil suits, that physical restraints must be justified on the basis of safety or security concerns, and that the court must take steps to minimize prejudice resulting from the presence of the

restraints. *See Davidson v. Riley*, 44 F.3d 1118, 1122–23 (2d Cir. 1995). Like the plaintiff in *Lemons*, Davidson was a pro se state prisoner who appeared throughout his six-day trial in his Section 1983 lawsuit in handcuffs and leg irons. *Id.* at 1119. Even though Davidson's claim involved correctional officers reading his legal mail, which did not bear on "either a propensity toward violence or risk of escape," the court still found the potential for prejudice to be significant because "the verdict apparently was to turn on whether the jury would believe Davidson and his prisoner-witnesses or the [prison] witnesses." *Id.* at 1126. After determining that the unnecessary imposition of restraints was not harmless, the court vacated the judgment, remanded for a hearing on the propriety of restraints, and ordered a new trial. *Id.* at 1126–27.

The Third Circuit most recently joined our court and the Second, Seventh and Eighth Circuits to hold that "requiring a party in a civil trial to appear in shackles 'may well deprive him of due process unless the restraints are necessary.'" *Sides v. Cherry*, 609 F.3d 576, 581 (3d Cir. 2010) (quoting *Davidson*, 44 F.3d at 1122). As in *Davidson*, "the core issue in Sides'[s] case was credibility." *Id.* at 584. The court ultimately concluded that Sides's shackling was harmless because the trial court took multiple steps to mitigate any prejudice. *Id.* at 584–85. Notably, however, the court rejected an alternative argument that the shackling was harmless "simply because [Sides's] propensity for violence was not directly at issue in the case." *Id.* at 584.

Thus, *Tyars*, *Lemons* and *Holloway* held that where a plaintiff's dangerousness is a merits issue, visible shackling violates due process unless justified on a case-by-case basis and steps are taken to mitigate prejudice. And, *Davidson* and

*Sides* recognized that prejudice may also arise where a core issue in the civil action is credibility.

## B.

Against this backdrop, we evaluate (1) whether there was error, (2) whether the error was obvious, (3) whether the error affected substantial rights, and (4) whether the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *C.B.*, 769 F.3d at 1018–19.[5]

## 1.

We readily conclude that the district court erred in allowing Claiborne to appear before the jury while shackled throughout his three-day trial without first determining whether the shackles were necessary.

As in *Duckett* and *Tyars*, the record does not demonstrate any particular reason why Claiborne had to be visibly restrained in front of the jury. *See Duckett*, 67 F.3d at 749; *Tyars*, 709 F.2d at 1284. His status as a convicted felon is not sufficient. *Duckett*, 67 F.3d at 749 (noting that murder conviction alone is not sufficient basis for shackling a defendant at sentencing); *cf. Lemons*, 985 F.2d at 357 (stating that "not all convicted felons are so dangerous and violent that they must be brought to court and kept in

---

[5] "We may also take into consideration the costs of correcting an error and—in borderline cases—the effect that a verdict may have on nonparties, although these considerations are by no means dispositive as to whether we will exercise our discretion to correct forfeited errors." *Hoard v. Hartman*, 904 F.3d 780, 787 (9th Cir. 2018) (internal quotation marks omitted). Here, unlike in *Hoard*, we are not reviewing civil jury instructions and this is not a borderline case. Therefore, we do not consider the costs of correcting the error or the effect a verdict may have on nonparties. *See id*. at 792 n.11.

handcuffs and leg irons"). Claiborne's criminal record consisted of nonviolent property and drug offenses. *Claiborne*, 2015 WL 5146746, at *1. One of the defendant officers testified that she never had a conflict with Claiborne aside from the 2010 incident. It was uncontested at trial that Claiborne was not considered a violent person in jail. Finally, there is nothing in the record to indicate that Claiborne disrupted court proceedings, acted disrespectfully in court, or attempted to escape. *See Duckett*, 67 F.3d at 749. Thus, the district court erred by concluding that it would have kept Claiborne shackled on the basis that he is a convicted felon serving a lengthy prison sentence. Such reasoning fails to perform the particularized consideration of necessity that we described in *Duckett*. *Id*. at 748.

**2.**

The second prong of the plain error analysis requires the error to be plain or obvious. *Draper*, 836 F.3d at 1085. Plain error "is error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011). We agree with Claiborne that the district court's failure to address Claiborne's shackling, and denial of a new trial based on the shackling, were plainly erroneous.

In 1983, we applied Supreme Court precedent to hold that there was a due process violation where a civil litigant "was exhibited to the jury in physical restraints when the express question it was to decide was whether he was dangerous to himself or others." *Tyars*, 709 F.2d at 1284. We concluded that this posed "an even greater potential for juror bias than trying a criminal defendant in prison garb" because the "'constant reminder of the accused's condition implicit in such distinctive, identifiable [restraints]' surely

could have had a significant, deleterious effect on the jury's judgment." *Id*. at 1284–85 (alteration in original) (quoting *Estelle v. Williams*, 425 U.S. 501, 504–05 (1976)). Thus, we held that shackling must be justified by "at least some prior showing of necessity" where "the critical question the jury must decide is whether the individual is dangerous to himself or others." *Id*. at 1285.

Defendants argue that our holding in *Tyars* is limited to civil *commitment* proceedings, and cite to unpublished dispositions characterizing *Tyars* as such. *See Carpenter v. Pfeil*, 617 Fed. App'x 658, 660 (9th Cir. 2015); *Hartman v. McCarthy*, 74 F.3d 1245, at *1 (9th Cir. 1996) (unpublished table decision). We are unpersuaded by these assertions for three reasons.[6]

First, our holding in *Tyars* hinged on the "express question" that the jury was to decide—i.e., the petitioner's dangerousness—not the type of civil proceeding. 709 F.2d at 1284–85. The commitment proceedings required the jury determine whether petitioner was dangerous to himself or others. *Id*. That question is also core to Claiborne's case. Second, when describing the impact of *Tyars* in *Duckett*, we observed generally that "courts have held that when an individual's level of dangerousness is a question the jury must decide in a civil proceeding, it is a violation of the right to a fair trial to compel that individual to appear before the jury bound in physical restraints." 67 F.3d at 748. Thus, our

---

[6] Moreover, we of course are not bound by unpublished dispositions. 9th Cir. R. 36-3(a); *Pedroza v. BRB*, 624 F.3d 926, 931 (9th Cir. 2010) ("[A]n unpublished decision is not precedent for our panel."). Nonetheless, we do not find them persuasive because *Carpenter* and *Hartman* held in the alternative that even if *Tyars* and *Duckett* controlled, there was no prejudice in those cases so any error was harmless. *Carpenter*, 617 Fed. App'x at 660; *Hartman*, 74 F.3d 1245, at *1.

dicta in *Duckett* is consistent with the broad nature of our holding in *Tyars*.    Finally, all other circuits that have discussed *Tyars* in the shackling context treated it as support for applying in civil cases the Supreme Court's rationale against routine shackling. *See Lemons*, 985 F.2d at 356–58 & n.2; *Davidson*, 44 F.3d at 1122–23; *Sides*, 609 F.3d at 581.

For these reasons, we conclude that the error was plain.

**3.**

"The third prong of the plain error analysis requires that the district court's plain error . . . prejudiced the complaining party or otherwise affected his or her substantial rights." *Hoard*, 904 F.3d at 790. "In most cases it means that the error must have . . . affected the outcome of the district court proceedings. *Id*. at 791 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). We conclude that Claiborne has also satisfied this factor.

Claiborne's dangerousness was the key issue at trial. *See Tyars*, 709 F.2d at 1285. The defendant officers justified their actions against Claiborne in the 2010 incident on the basis that he presented a security risk. For instance, Officer Blauser testified that she placed Claiborne in traditional handcuffs rather than waist chains because she believed he posed an immediate threat. She stated she did not honor Claiborne's accommodations because "[s]ecurity supersedes everything." Officer Blauser also explained that she and Officer Martin escorted Claiborne straight across the yard rather on the paved track area "because of his aggression." On cross-examination, when asked why she took him down on the yard, Officer Blauser responded it was because Claiborne presented a threat to her and her partner. In total, Officer Blauser referred to Claiborne as "aggressive" or a threat at least forty times during her testimony. In closing

arguments, the defense repeated Blauser's testimony and emphasized that "she perceived a threat" and "took the most reasonable action under the circumstances." In short, if the jury believed that Claiborne posed a threat to the officers, then defendants prevailed because their use of force was justified.

Not only did Claiborne's case hinge on his alleged dangerousness, the trial pitted his credibility against the defendant officers' credibility, and raised the issue of flight risk as defendants claimed that he was trying to escape from them during their escort in 2010. Claiborne's visible shackling was a "constant reminder" to the jury of his condition as a potentially violent and unreliable person who needed to be restrained. *Tyars*, 709 F.2d at 1284 (quoting *Estelle*, 425 U.S. at 504); *see also Lemons*, 985 F.2d at 357. We have also recognized that physical restraints "may confuse and embarrass the [individual], thereby impairing his mental faculties[,] and they may cause him pain." *Duckett*, 67 F.3d at 748 (quoting *Spain v. Rushen*, 883 F.2d 712, 720–21 (9th Cir. 1989) (collecting cases) (internal quotation marks omitted)). No doubt, shackles likely impaired Claiborne as a pro se litigant in the presentation of his case to a jury over three days. *Id.* Although the district court noted, ten months after the trial, that Claiborne's hands were not restrained, this is contradicted by Officer Blauser's contemporaneous observation at trial that Claiborne was "wearing [waist chains] right now" and that these waist chains were "big and bulky."

Defendants argue there was no prejudice because the jury already knew Claiborne was a convicted felon. But the Supreme Court and other circuit courts have uniformly rejected the idea that a conviction alone could justify the use of shackles because restraint "almost inevitably affects

adversely the jury's perception of the character of the defendant." *Deck*, 544 U.S. at 633; *see also Duckett*, 67 F.3d at 749 (noting that a defendant's status as a convicted felon, "[s]tanding alone, . . . is not a sufficient reason to impose physical restraints"); *Lemons*, 985 F.2d at 357. We are also not convinced by defendants' insistence that the evidence presented at trial overwhelmingly supported the jury's verdict. Crucially, the district court denied defendants' motion for judgment as a matter of law at the close of evidence, demonstrating that a reasonable jury had a legally sufficient evidentiary basis to find in Claiborne's favor. *See* Fed. R. Civ. P. 50(a).

Because of the inherent nature of visible shackles and its interplay with the heart of Claiborne's excessive force claim, we conclude that Claiborne was prejudiced by the erroneous use of shackling in the absence of any showing of a compelling need for such restraints.

**4.**

The final prong requires showing that "the district court's errors are so grave as to seriously impair the fairness, integrity, or public reputation of judicial proceedings." *Hoard*, 904 F.3d at 791 (internal quotation marks and alterations omitted). This is "undoubtedly the hardest [prong] to meet." *Id*. Because of the fundamental nature of the error, however, we find that this last prong has also been met.

Shackling "must be limited to cases urgently demanding that action," and because there was no showing of necessity in Claiborne's case, he was unduly prejudiced in violation of his due process right to a fair trial. *Tyars*, 709 F.2d at 1284; *see also Maus v. Baker*, 747 F.3d 926, 927 (7th Cir. 2014) ("The sight of a shackled litigant is apt to make jurors think

they're dealing with a mad dog . . .").  Just as an erroneous jury instruction could "place[] a heavy thumb on the scale in favor of the [d]efendants," the erroneous use of shackling here also constituted a "grave injustice" in depriving Claiborne of "a meaningful and fair opportunity to seek redress for alleged violations of his constitutional right to be free from cruel and unusual punishment." *Hoard*, 904 F.3d at 792.

We also reiterate that shackling not only prejudices the inmate litigant in a case like this, it presents an affront to the dignity of the courtroom.  *Deck*, 544 U.S. at 631 (citing *Allen*, 397 U.S. at 344).  The Supreme Court has stressed that "[t]he routine use of shackles in the presence of juries would undermine [the] symbolic yet concrete objective[]" of "maintain[ing] a judicial process that is a dignified process." *Id*.  Hence, shackling may only be used when there is an "individualized security determination[]" that "take[s] account of the circumstances of the particular case."  *Id*. at 632.  That individualized determination did not take place here and the district court's blanket assertion that it would have ordered Claiborne shackled solely based on his status as a convicted felon was plainly erroneous.  We therefore exercise our discretion on plain error review to reverse the district court's denial of the Rule 59(a) motion and remand for a new trial on Claiborne's claims against Officers Blauser and Martin.

## IV.

Claiborne was denied a fair trial when he was visibly shackled before a jury that had to decide his dangerousness as it determined whether the jury believed his or defendants' version of the events that underlie his Section 1983 claims. There was no individualized determination of the security need for such restraints, yet this mobility impaired plaintiff

was presented to the jury in shackles, corroborating the defense's position that Claiborne was an insubordinate, aggressive inmate and thereby undermining his case. On remand, the district court has discretion to impose shackling during the new trial, but it may only do so after a full hearing at which officers show a compelling need for security and the court considers any less restrictive alternatives.[7]  *See*

---

[7] Because we remand for a new trial on the shackling claim, we do not address the merits of Claiborne's evidentiary arguments that the district court erred in barring his testimony about the ADA, preventing him from introducing or testifying about his medical records, and denying his request for a medical expert.  The district court may revisit these issues if Claiborne raises them again at the new trial.

We note, however, that the district court appears to misstate the law when it denied Claiborne's request for a medical expert under Federal Rule of Evidence 706(a).  Although the district court correctly recognized that Rule 706(a) provides discretion to appoint a neutral expert witness, *see McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991), *vacated on other grounds sub nom. Helling v. McKinney*, 502 U.S. 903 (1991), *judgment reinstated*, 959 F.2d 853 (9th Cir. 1992), *aff'd*, 509 U.S. 25 (1993), the district court seemed to categorically limit the relevance of a medical expert to testifying about a plaintiff's *current* condition.  Yet courts have regularly considered requests for and appointed experts to review medical records and testify about *prior* medical needs and treatment in deliberate indifference cases.  *See Gorton v. Todd*, 793 F.Supp.2d 1171, 1179–81 (E.D. Cal. 2011) (collecting cases).  Moreover, a medical expert can help with factfinding in excessive force claims because "the extent of injury suffered by an inmate is one factor that may suggest 'whether the [defendant's] use of force could plausibly have been thought necessary' in a particular situation." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  If Claiborne renews his request for appointment of a neutral medical expert on retrial, the district court should weigh these considerations in exercising her discretion.  *See McKinney*, 924 F.2d at 1511; *see also Gorton*, 793 F.Supp.2d at 1185–86.

*Duckett*, 67 F.3d at 748; *Tyars*, 709 F.2d at 1285; *see also Davidson*, 44 F.3d at 1126.

For the foregoing reasons, we reverse the district court's denial of Claiborne's Rule 59(a) motion and remand for a new trial.

**REVERSED AND REMANDED.**