NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 8 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CLINTON B. RUSH,

Plaintiff-Appellant,

v.

ANDREW WEINSTEIN; et al.,

Defendants-Appellees.

No.   23-35018

D.C. No. 1:18-cv-00073-REP

MEMORANDUM*

Appeal from the United States District Court
for the District of Idaho
Raymond Edward Patricco, Jr., Magistrate Judge, Presiding

Argued and Submitted October 20, 2023
Portland, Oregon

Before:  GILMAN,** KOH, and SUNG, Circuit Judges.

Clinton B. Rush brought suit under 42 U.S.C. § 1983 against three Idaho

State Police officers for allegedly using excessive force when arresting him near a

state-line border crossing.  He specifically claims that they pepper-sprayed him in

his groin area during the arrest.  The officers denied doing so and, after a five-day

---

*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

**        The Honorable Ronald Lee Gilman, United States Circuit Judge for
the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

trial, the jury found in favor of the officers.

Rush now appeals the district court's denial of his motion for a new trial and for sanctions against the officers' counsel. He alleges that he is entitled to a new trial because (1) he was prejudiced by the appearance of being incarcerated throughout the trial, (2) defense counsel impermissibly vouched by making statements that carried an improper implication of government support, (3) defense counsel committed various acts of misconduct that compromised the fairness of the trial and violated several of the district court's limiting orders, (4) the district court impermissibly permitted the officers' expert witness to opine about information beyond his area of expertise, (5) the district court erred by admitting various pieces of prejudicial evidence, and (6) the district court erred by permitting defense counsel to cross-examine Rush's expert witness about jeans that Rush did not wear on the day of his arrest. Rush also claims that the district court erred by denying his motion for sanctions.

A district court's denial of a motion for new trial made pursuant to Rule 59(a) of the Federal Rules of Civil Procedure and a district court's denial of a motion for sanctions are reviewed under the abuse-of-discretion standard. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 728 (9th Cir. 2007) (motion for new trial); *Avery Dennison Corp. v. Allendale Mut. Ins. Co.*, 310 F.3d 1114, 1117 (9th Cir. 2002) (motion for sanctions). We have jurisdiction under 28 U.S.C. § 1291, and we

affirm.

1.      Rush first contends that the district court erred in denying his motion for a new trial because he was allegedly seen in leg restraints by the jurors.  He argues that this constituted plain error.  To the contrary, the district court found that Rush was not visibly shackled.  Nothing in the record suggests that the jurors saw Rush wearing leg restraints during the trial.  The district court's finding of fact on this issue was therefore not clearly erroneous.  *See K.D. ex rel. C.L. v. Dep't of Educ., Haw.*, 665 F.3d 1110, 1117 (9th Cir. 2011) (explaining that a district court's factual determinations are reviewed under the clear-error standard).

Rush makes the related argument that the district court erred by not granting a new trial because two jurors allegedly saw him in his prison uniform while being transported to court on the last day of trial.  Rush's counsel, however, declined to request any remedial measures after informing the district court of this alleged incident.  Because the pursuit of this claim was "intentionally relinquished," Rush's argument on this issue is waived.  *See Crowley v. EpiCept Corp.*, 883 F.3d 739, 748 (9th Cir. 2018) ("A 'party forfeits a right when it fails to make a timely assertion of that right and waives a right when it is intentionally relinquished or abandoned.'" (citations omitted)).

Rush further maintains that the presence of three security officers at trial constituted plain error.  Two Idaho Department of Corrections officers and one

3

United States Deputy Marshal were present in the courtroom during Rush's trial.

In *Holbrook v. Flynn*, 475 U.S. 560 (1986), four uniformed state troopers were seated "not far behind" the six defendants during their criminal trial. *Id.* at 562. There, the troopers were seated in the spectator section, separated by a railing from the defendants. *Id.* at 562 & n.2. The trial judge emphasized this separation in ruling that the defendants would not be prejudiced. *Id.* at 563. Ultimately, the Supreme Court found that these circumstances did not inherently prejudice the defendants' right to a fair trial. *Id.* at 572. And because the defendants did not show actual prejudice from the security measures, their fair-trial claims failed. *Id.*

The facts in the present case are distinguishable from *Holbrook*. Here, the record indicates that the corrections officers were not in the spectator section, but were seated directly behind Rush inside the courtroom well, with one of the officers placed between Rush and the jury box. And unlike in *Holbrook*, the officers were uniformed Department of Corrections guards. *Cf. Wilkens v. Lafler*, 487 F. App'x 983, 989 (6th Cir. 2012) ("*Holbrook*'s reassurance that jurors will simply treat these guards as safety officers for the court rather than 'reminders of the defendant's special status' no longer applies when the uniforms identify the guards as prison officers rather than peace officers.") (citation omitted) (quoting *Holbrook*, 475 U.S. at 569).

But regardless of whether these circumstances establish error, they do not

4

establish "plain or obvious" error. Rush has not identified, nor are we aware of, any cases where this court has considered the potential prejudicial effect of uniformed state corrections officers in the courtroom. Accordingly, we agree with the district court that the court's security measures did not constitute plain error.

2. Rush next claims that defense counsel improperly vouched during voir dire when counsel identified himself as a Special Deputy Attorney General and later stated that he was "biased toward cops." Because Rush raised this issue for the first time in his reply brief in the district court, he "fail[ed] to make a timely assertion of [the] right." *See Claiborne v. Blauser*, 934 F.3d 885, 893 (9th Cir. 2019) (citation omitted). This claim is therefore reviewed under the plain-error standard. *See id.*

We have doubts that identifying oneself as a Special Deputy Attorney General is improper vouching, but even if it is, doing so does not constitute plain or obvious error. *See Draper v. Rosario*, 836 F.3d 1072, 1083 n.7 (9th Cir. 2016) (declining to resolve the question whether defense counsel's comments about the relative credibility of the witnesses were impermissible by virtue of defense counsel introducing himself as "an attorney with the Office of the Attorney General").

Rush fails to identify any other instances of alleged vouching, so any arguments predicated on such improper vouching are forfeited. *See, e.g.,*

*Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) ("[W]e decline to address this argument because it was inadequately briefed . . . . We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review." (citation omitted) (internal quotation marks omitted)).

3.      Rush further argues that he is entitled to a new trial because defense counsel committed various acts of misconduct.  Examples range from alleged violations of the district court's limiting orders to improper questioning of various witnesses.

"To receive a new trial because of attorney misconduct in the civil context, [litigants] must meet a high standard[.]" *S.E.C. v. Jasper*, 678 F.3d 1116, 1129 (9th Cir. 2012).  A "moving party must demonstrate adverse counsel's misconduct . . . 'substantially interfered' with the moving party's interest." *Id. (*quoting *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1405 (9th Cir. 1995)).  "[T]he 'flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'"  *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (quoting *Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 388 (9th Cir. 1965)).

Nothing in the present case suggests that the conduct of defense counsel

6

"sufficiently permeate[d] [the] entire proceeding.'" *See id.* In *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1149–52 (9th Cir. 2001), by contrast, the court found misconduct that rendered the trial unfair where counsel made repeated racially inflammatory statements and raised unfounded accusations of racism against the opposing party. The accusations here do not come close to this level of misconduct.

4. Rush also claims that the district court erred by permitting the defendants' expert witness—John Kapeles—to testify, because Kapeles allegedly failed to consider the possibility that the officers used more than one pepper-spray variant. This argument, however, misses the mark. The officers testified that the only pepper spray that they have ever carried was the brand developed by Kapeles's company. They likewise provided photographs of the pepper-spray cannisters from the day that Rush was arrested. Kapeles confirmed that the cannisters in these photographs were developed by his company. And Kapeles also testified that the only pepper-spray product his company had sold to the Idaho State Police was the pepper spray presented by the officers. Putting these facts together, we find that Kapeles's testimony "rests on a reliable foundation and is relevant to the task at hand." *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).

Rush likewise claims that Kapeles improperly testified about liquid

chromatography. But contrary to Rush's representation, Kapeles discussed only how liquid chromatography may be used to identify a pepper spray's capsaicinoid composition. Kapeles thus did not discuss liquid chromatography as it relates to the clothes at issue. He instead provided his understanding of how liquid chromatography is conducted simply as background to develop his testimony.

5. Rush next asserts that the district court erred by admitting photographs of the officers' alleged pepper-spray cannisters because the cannisters lacked a chain of title and authenticity. The district court, however, expressly found that the officers "did preserve their pepper spray containers." It also found that the officers took photographs of these cannisters and that the cannisters had a clear chain of title. We find nothing in the record indicating that the photographs lacked authenticity.

Rush likewise contends that the district court erred by permitting the officers to admit videos of Rush's arrest and its subsequent aftermath into evidence. But Rush stipulated to the admission of these videos at trial. And even if the videos were not stipulated to, they were highly relevant to refute Rush's claim that he was in pain from the pepper spray immediately after his arrest.

6. Rush also argues that affording defense counsel latitude to cross-examine Rush's expert witness—Mackenzie Bentley—about the jeans that Rush did not wear on the day of his arrest was an abuse of discretion. He reasons

8

that cross-examining Bentley about these jeans was irrelevant and outside the scope of direct examination.

Rule 611(b) of the Federal Rules of Evidence, however, allows cross-examination on "matters affecting the witness's credibility." The district court here properly allowed the officers to impeach Bentley's credibility under Rule 611(b). Impeachment was proper because Bentley's testing, which found pepper spray components on pants that Rush did not wear on the day of the pepper-spray incident, is consistent with the officers' theory of cross-contamination. *See United States v. Palmer*, 536 F.2d 1278, 1282 (9th Cir. 1976) ("The range of evidence that may be elicited for the purpose of discrediting a witness is very liberal." (citation omitted)).

7. Rush finally argues that the district court abused its discretion by not sanctioning defense counsel under 28 U.S.C. §1927 or under the court's inherent powers. But Rush fails to cite any acts of defense counsel that constitute bad faith or willful violations of any court order. *See Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) ("[A] district court may levy sanctions pursuant to its inherent power for 'willful disobedience of a court order . . . or when [a] party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (quoting *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001))). And Rush has not stated, even in a conclusory manner, how counsel "multiplie[d] the proceedings . . .

9

unreasonably and vexatiously" as is required under 28 U.S.C. § 1927. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002).

In sum, none of Rush's claims are sufficient to justify a new trial. We therefore **AFFIRM** the judgment of the district court.